## S91A0214. BYRD v. THE STATE.
(403 SE2d 38)

HUNT, Justice.

Timothy Dewayne Byrd stabbed and killed his cousin, Don Eric Harris.[1] He was convicted of malice murder and was given a life sentence. He appeals, raising as error the sufficiency of the evidence, and the admission of part of one of his statements into evidence.

The defendant admitted fighting with the victim, and stabbing him, but claimed self-defense. The jury was authorized to find the facts as follows. The evening of the murder, the victim visited the defendant and, as the victim was leaving, the defendant taunted him, accusing him of killing someone, and stating the victim's mother was a drunk. While the victim was leaving, the defendant got a knife and stabbed him four times. After the defendant stabbed the victim, he tried to wash the victim's blood off his knife and, later, tried to have the victim's car moved from the scene. The defendant's mother and brother took the victim to the hospital where he died.

1. Having reviewed the evidence in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found the defendant guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State,* 245 Ga. 89, 90 (263 SE2d 131) (1980).

2. The defendant contends the trial court erred by admitting his statement to a county sheriff's detective into evidence. He argues the statement was inadmissible because the detective elicited it following the defendant's "equivocal" request for counsel during a custodial interrogation. See *Smith v. Illinois,* 469 U. S. 91 (105 SC 490, 83 LE2d 488) (1984).

The defendant was interviewed by county sheriff's detective Bedford at the crime scene shortly after the victim was stabbed. Before the detective interviewed the defendant, who was detained in a patrol car, another detective removed the defendant's handcuffs, and detec-

---

[1] The homicide occurred on May 28, 1988. The defendant was indicted on November 10, 1988, by the Walker County grand jury, and tried before a jury for four days beginning November 20, 1988. He was convicted on December 2, 1988. His motion for new trial, filed December 12, 1988, and amended November 6, 1990, was denied on November 6, 1990. The transcript was certified on April 19, 1989. The defendant's notice of appeal was filed on November 7, 1990, and the appeal was docketed in this court on November 14, 1990. The case was orally argued on January 23, 1991.

tive Bedford gave the defendant his *Miranda* warnings. The defendant then began to speak with detective Bedford. After a few minutes, the defendant asked detective Bedford if the detective thought he, the defendant, needed a lawyer. The detective responded he did not know whether the defendant needed a lawyer, and told him he was questioning him in order to find out what happened. The defendant then stated he would like to continue talking, and the interview proceeded. The detective testified that had the defendant not stated his desire to continue talking, the interview would have ended.

The defendant objects to that portion of his statement made after his question to detective Bedford about his need for a lawyer. He argues the admission of that statement eviscerated his defense of justification, because in the statement as summarized by detective Bedford, the defendant said he grabbed the murder weapon before the victim had picked up anything with which to fight, whereas defendant's testimony at trial was that he saw the victim pick up what he thought was a weapon, and then, in panic, he grabbed a knife in self-defense.

> An accused in custody, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him," unless he validly waives his earlier request for the assistance of counsel. [Cit.] This "rigid" prophylactic rule, [cit.], embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel. See, *e.g., Edwards v. Arizona*, supra, 451 U. S., at 484-485, 101 S.Ct., at 1884-1885 (whether accused "expressed his desire" for, or "clearly asserted" his right to, the assistance of counsel); *Miranda v. Arizona*, 384 U. S. at 444-445, 86 S.Ct., at 1612 (whether accused "indicate[d] in any manner and at any stage of the process that he wish[ed] to consult with an attorney before speaking"). Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.

*Smith v. Illinois*, supra at 105 SC 492-493.

The threshold inquiry, then, is whether the defendant invoked his right to counsel. "On occasion, an accused's asserted request for counsel may be ambiguous or equivocal. . . . Courts have developed conflicting standards for determining the consequences of such ambiguities." Id. at 105 SC 493. Indeed, the jurisdictions which have been presented with the precise issue in this case — is a defendant's ques-

tion to an officer of the officer's opinion whether the defendant needs counsel an assertion of the defendant's right to counsel? — are fairly evenly split. See Annot. What Constitutes Assertion of Right to Counsel Following Miranda Warnings — State Cases § 19, 83 ALR4th 443, 518-528 (1991).

In *Hall v. State*, 255 Ga. 267 (336 SE2d 812) (1985), we concluded that the question "When do you think I'll get to see a lawyer?" constituted an invocation of Hall's Fifth Amendment right to presence of counsel. In so finding,[2] we adopted the approach of *State v. Smith*, 661 P2d 1001 (Wash. App. 1983):

> "[W]here a suspect makes an ambiguous statement or an inartful statement with reference to his desire for an attorney, such as 'maybe I should call my attorney,' an equivocal request for counsel has been made and the request must be clarified before proceeding with the interrogation. [Cit.]"

*Hall v. State*, supra at 270, citing *State v. Smith*, supra. After adopting that rule, we examined the circumstances in which Hall asked the question.[3] Significant was the fact that Hall's question to the officer came just after his interrogators had shifted abruptly from questioning him about other crimes, to questioning him about the murder.

Applying the *Hall* analysis to this case, we conclude Byrd's question was not a "statement with reference to his desire for an attorney," ambiguous, inartful, or otherwise. "Mere mention of an attorney does not constitute an equivocal request for counsel, as the word 'attorney' is not talismanic." *Norman v. Ducharme*, 871 F2d 1483, 1486 (4) (9th Cir. 1989). Moreover, unlike in *Hall*, the circumstances surrounding Byrd's question do not suggest an equivocal request for counsel. There was no abrupt shift from general questioning to questions focusing on the murder and Byrd's question came just a few minutes after detective Bedford had given him *Miranda* warnings and after the interview had begun. See *McKenzie v. State*, 187 Ga. App. 840, 844 (371 SE2d 869) (1988). The trial court correctly concluded the defendant's question to officer Bedford did not rise to the level of an equivocal request for counsel.

*Judgment affirmed. All the Justices concur.*

---

[2] "Thus, we find that Hall's question at the end of the December 28 interrogative session was not a clear invocation of his Fifth Amendment right to the presence of counsel, but it was at least an arguably ambiguous or inartful request of that type." Id. at 271 (1).

[3] Some courts have expressly held that the "totality of the circumstances" test, which is used to determine whether an accused has "knowingly and voluntarily" waived his *Miranda* rights, has no bearing in the determination of whether an accused's request for counsel is clear or equivocal. See, e.g., *Owen v. State*, 849 F2d 536, 539 (4) (11th Cir. 1988).

DECIDED APRIL 11, 1991 —
RECONSIDERATION DENIED MAY 9, 1991.

*Bruce & Hentz, William D. Hentz*, for appellant.
*Ralph Van Pelt, Jr., District Attorney, Michael J. Bowers, Attorney General, Mary H. Hines*, for appellee.