A96A1616. JACKSON v. THE STATE.
(476 SE2d 615)

BEASLEY, Chief Judge.

An indictment was returned charging Jackson with the murder of Dustin Shannon, age two and one-half, and with cruelty to children. Jackson was found guilty of cruelty to the child (OCGA § 16-5-

70) but not guilty of murder.

The evidence introduced in support of the verdict showed the following. Jackson, the boyfriend of Dustin's mother, began living with them on about June 1, 1992, before which time Dustin had not been bruised or injured. Later in June, Dustin told his maternal grandmother that Jackson inflicted the bruises she observed on his buttocks. Although Dustin also told his mother that Jackson had bruised him, she dismissed his complaints and told everyone that her other child, six-year-old Little Marty, had hit Dustin. This injury was investigated by the Department of Family & Children Services (DFACS) as a result of the grandmother's call. Because of it, the mother would not let the grandmother see Dustin anymore.

Another incident occurred in July, when Dustin was observed by family members and friends with "raccoon eyes," dark circles around both eyes. Medical testimony was that the child's skull was fractured. This occurred while Jackson was alone with Dustin. Jackson claimed he had been chasing Dustin when he fell and hit his head on a rocking chair. Dustin told the babysitter that Jackson had hit him, causing the black eyes. The DFACS was also called to investigate this incident.

On Sunday evening, October 4, Jackson had been watching Dustin at home while the mother momentarily left to run errands. When she returned, Dustin was crying. Jackson, who was in the bathroom with him, related to the mother he had spanked Dustin because he had urinated on himself, threw Dustin's pajamas at her, and said she should finish dressing her son. Dustin told his mother that Jackson had hit him in the stomach. Although he said he was alright, he vomited in his bed twice during the night. The following morning, October 5, he lost consciousness and was taken to the hospital in critical condition. He was transferred to Scottish Rite Hospital and upon arrival was in a state of shock as a probable result of peritonitis or an inflammation of the bowel lining, his bowel had ruptured, his abdomen was distended, and he showed significant signs of brain injury.

While the victim's mother and Jackson were at the hospital waiting to hear the victim's prognosis, Jackson turned to her and was overheard saying, "Please don't turn me in, Baby. Please don't turn me in." The next day, October 6, it was decided to remove Dustin's life support because he was brain dead.

Two pediatric physicians from Scottish Rite testified that the injuries sustained by the child in the five-month period prior to his death were consistent with battered child syndrome. Both physicians and the medical examiner concluded that the injuries causing the victim's death resulted from a direct blow to the abdomen by a blunt object, i.e., a fist.

1. In his first enumeration of error, Jackson raises two issues

relating to an interrogation of him by police officers at Scottish Rite Hospital following the victim's admission.

First, he maintains he made an equivocal request for counsel during the interview and that the officers denied him his Fifth Amendment right to counsel by not ceasing the interrogation and confining all questioning to clarifying his wishes regarding an attorney. Second, he contends that because the interview contained inadmissible evidence, the trial court erred in allowing the State to present it in its entirety.

Jackson has not complied with Court of Appeals Rule 27 (a) (1), which requires a statement in Part One of appellant's brief setting forth "the method by which each enumeration of error was preserved for consideration." "Appellate courts review enumerations [of error] for correction of errors of law committed by the trial court — where motions or objections are properly presented for a ruling by the trial court." (Citations and punctuation omitted.) *Cole v. State*, 211 Ga. App. 236, 238 (438 SE2d 694) (1993). Upon our own search through the transcript, we do find that after a *Jackson v. Denno* hearing, the court found that Jackson's statement to police was freely and voluntarily given. Appellant's treatment of the issue was marginally sufficient to preserve it for appellate review.

(a) As to this issue, the transcript shows that Detective Harris, the lead investigator, first approached Jackson in the hallway of Scottish Rite on the morning of October 6 and asked to speak to him concerning Dustin. Jackson was already in police custody on an unrelated matter. At the outset, Harris and another officer showed Jackson a waiver-of-rights form and asked him to read his rights out loud. Jackson read the first part of the form and indicated that he understood his rights, but as he was reading the second part he asked what "coercion" meant. As the officers were explaining that term, he remarked, "What I — what I can't understand is — I mean, is this — is this natural, I mean? Or is there something they're trying to say we did? . . . Cause, I mean, if this is trying to say that I did something, you know, what should I do? Should I ask — should I ask for an attor- — I don't know." Harris responded that the officers were just trying to find out what happened to the child from both his mother and Jackson, who were the only other persons present when he was injured; that they had already talked to the mother; and that they wanted to question Jackson and get a statement from him. After saying he had nothing to hide and loved the child, Jackson gave a statement and signed the waiver-of-rights form.

Under the circumstances, Jackson's comments constituted a request for clarification concerning the officers' purpose in questioning him, not an equivocal request for counsel. See *Davis v. United States*, 512 U. S. ___ (114 SC 2350, 129 LE2d 362) (1994) (suspect did

not request counsel when during the course of an interview he remarked, "Maybe I should talk to a lawyer."); *Byrd v. State*, 261 Ga. 202 (2) (403 SE2d 38) (1991) (defendant did not request counsel by asking officer whether the defendant needed a lawyer); compare *Henry v. State*, 265 Ga. 732, 735 (4) (b) (462 SE2d 737) (1995) (defendant made an ambiguous statement regarding his desire to assert his right to counsel by stating, in response to the question of whether he wanted a lawyer, "I might need one. If I need one."); *Hall v. State*, 255 Ga. 267, 268 (1) (336 SE2d 812) (1985) (defendant made an arguably ambiguous request for counsel by asking, "[W]hen do you think I'll get to see a lawyer?"). " 'Mere mention of an attorney does not constitute an equivocal request for counsel, as the word "attorney" is not talismanic.' [Cit.]" *Byrd*, supra at 204.

Moreover, the Georgia Supreme Court has held that " 'where the accused asks a question that contains an ambiguous or equivocal reference to the availability of counsel, an interrogating officer must be given considerable latitude in formulating a reasonable and responsive answer. . . .' [Cit.]" *Hall*, supra at 274 (3). In this case, the officer did so. See *Luallen v. State*, 266 Ga. 174, 177 (4) (465 SE2d 672) (1996).

*Davis*, supra, relied on by the State, is distinguishable. The United States Supreme Court held that, after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers have no obligation to stop questioning a suspect and ask clarifying questions if the suspect has not made an unambiguous or unequivocal request for counsel. Jackson's reference to an attorney came not while being questioned but while he was in the process of waiving his *Miranda* rights.

(b) As to Jackson's second issue, he does not cite and we have not found where in the record Jackson preserved it for appellate review. We therefore do not address it.

2. Jackson complains of the trial court's failure to charge the provisions of OCGA § 24-3-53: "All admissions shall be scanned with care, and confessions of guilt shall be received with caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction."

In the statements given by Jackson to the police, he admitted disciplining the child but denied intentionally hurting him or hitting him in the stomach. Such statements were at most admissions and not confessions. See *Stowers v. State*, 205 Ga. App. 518 (1), 519 (422 SE2d 870) (1992). Failure to charge the language of OCGA § 24-3-53 where there has been an admission but not a confession is not error. *Richardson v. State*, 256 Ga. 746, 748 (6) (353 SE2d 342) (1987).

3. Jackson contends that the trial court erred in allowing Detective Harris to testify in violation of the rule of sequestration (OCGA

§ 24-9-61) and in instructing the jury as to the rule without explaining its meaning.

The investigator had been exempted from the rule for a motion hearing the week before trial, where he was not a witness, because he was the main investigator. The request was not expressly renewed by the State at the outset of the trial, but the investigator remained after the rule was invoked, without his presence being challenged. When he was called as a witness, defendant objected. He was listed on the indictment as a witness and was shown on the warrant as the complaining affiant. According to *Chastain v. State*, 255 Ga. 723, 724 (2) (342 SE2d 678) (1986), permitting Detective Harris to testify was not error.

Moreover, "[a]ssuming arguendo a violation of the rule of sequestration, ' " "(i)n criminal cases, the violation of the rule of sequestration of *any* witness . . . goes to the credibility rather than to the admissibility of the witness' testimony.' " ' [Cit.] 'A party's remedy for a violation of the rule is to request the trial court to charge the jury that the violation should be considered in determining the weight and credit to be given the testimony of the witness.' [Cit.]" (Emphasis in original.) *Nelson v. State*, 208 Ga. App. 671, 673 (5) (431 SE2d 450) (1993). In its charge to the jury, the court did explain the meaning of the rule in the language requested by defendant and specifically mentioned its applicability to Detective Harris. "On appeal, one cannot complain of a . . . charge that his own procedure or conduct aided in causing. . . . [Cits.]" *Wright v. State*, 199 Ga. App. 718, 719 (2) (405 SE2d 757) (1991).

4. Jackson contends that the court erred in its admission of prejudicial hearsay testimony.

At trial, Dustin's maternal grandmother testified to statements made to her by Dustin's brother concerning the allegation that he had caused the bruises on Dustin's buttocks. Jackson objected because he had not been given an opportunity to cross-examine the brother. The court overruled the objection after confirming that the State intended to produce the brother as a witness. The brother did not testify, but Jackson did not renew his objection, thereby failing to preserve this issue for appellate review. " ' "Where testimony is provisionally or conditionally admitted, counsel must renew his objection to it later and invoke a final ruling if he still desires its exclusion, and on his failing to do so no valid assignment of error can be made upon the court's ruling." (Cits.)' [Cit.]" *Harden v. State*, 166 Ga. App. 279, 280 (2) (304 SE2d 456) (1983).

5. Jackson contests the court's failure to charge the jury that the presumption of innocence " 'remains with [the defendant], in the nature of evidence, until rebutted by proof satisfying the jury of his guilt to the exclusion of reasonable doubt. . . .' " *Reaves v. State*, 146

Ga. App. 409, 412 (6) (246 SE2d 427) (1978). He argues that this omission was particularly harmful in view of the court's charge that evidence does not include, among other things, the plea of not guilty.

In this case, like *Rigsby v. State*, 184 Ga. App. 330, 331 (2) (361 SE2d 694) (1987), and unlike *Reaves*, the trial court's charge to the jury on the presumption of innocence was full, fair and complete. "The language requested . . . was used in *Coffin v. United States*, 156 U. S. 432, 458 (15 SC 394, 39 LE 481) in a legalistic discussion of the concept of the presumption of innocence, but was not intended to be required in a jury charge. [Cit.] It is not essential to the jury's understanding of the principle and is arguably very obscure and overly narrow in meaning; moreover, it might be seen by a jury as limiting the defendant's right to the presumption in some cases depending on the nature of the evidence." *Rigsby*, supra.

6. Jackson complains of the trial court's denial of his motion for directed verdict of acquittal, arguing that at the time the motion for directed verdict was made, the evidence was insufficient to support his conviction. "On appeal of the overruling of a motion for directed verdict, an appellate court can consider all relevant evidence of record whether presented before or after the motion was made. [Cit.]" *Watkins v. State*, 207 Ga. App. 766, 774 (7) (430 SE2d 105) (1993). The standard of review is that from *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Hestley v. State*, 216 Ga. App. 573, 578 (5) (455 SE2d 333) (1995). There was ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that Jackson was guilty of the offense of which he was convicted.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 5, 1996 —
RECONSIDERATION DENIED SEPTEMBER 23, 1996.

*Frank G. Smith*, for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Russell J. Parker, Nancy I. Jordan, Assistant District Attorneys*, for appellee.