## A01A0655. CALDWELL v. THE STATE.
### (549 SE2d 449)

ANDREWS, Presiding Judge.

Kendall Caldwell appeals from the judgment of conviction entered on jury verdicts finding him guilty of two counts of aggravated assault and two counts of trafficking in cocaine.[1] We find no error and affirm the judgment of conviction.

Caldwell was jointly indicted and tried with co-defendant Jason Tillman on charges that, during an attempted drug deal at Caldwell's house involving over 200 grams of cocaine, Caldwell and Tillman assaulted and shot co-defendant Maurice Montgomery.[2] Both counts of aggravated assault and one of the trafficking counts arose from those charges. The second trafficking count arose from charges that Caldwell and Tillman were jointly in possession of over 400 grams of cocaine found at a hotel room rented by Tillman.

In support of the two counts of aggravated assault and the trafficking count that occurred at Caldwell's house, the State produced direct and circumstantial evidence showing that Montgomery went to Caldwell's house to participate in a drug deal for over 200 grams of cocaine, but, during the course of the attempted deal, a fight erupted in which Caldwell and Tillman physically beat, pistol whipped, and shot Montgomery. Testimony from Caldwell's neighbors established that, shortly after Montgomery arrived at Caldwell's house wearing a black leather jacket, gunfire sounded from inside the house. After the gunfire, neighbors saw Montgomery trying to jump out a window and saw Caldwell and Tillman leave the house and drive off in separate cars. One of the neighbors testified that Montgomery appeared at his front door bleeding and wearing only boxer shorts and one shoe and pounded on the door attempting to get inside.

---

[1] Guilty verdicts on two additional counts of possession of cocaine were merged into the guilty verdicts on the traffic counts.

[2] Montgomery was charged in the same indictment with trafficking in cocaine, tried separately after his severance motion was granted, and found guilty. He subsequently testified for the State in the case against Caldwell and Tillman under a grant of use immunity. See OCGA § 24-9-28. Montgomery's conviction was affirmed on appeal in *Montgomery v. State,* 249 Ga. App. 777 (549 SE2d 463) (2001).

Police responded to 911 calls from the neighbors reporting the gunfire and describing the suspects and the cars they were driving. Based on the descriptions provided, police stopped Caldwell and Tillman as they were driving from the scene. Tillman's clothing was bloody, and a handgun was found in the car he was driving. Caldwell also had blood on his clothing, and a spent shell casing fell out of his clothing when he exited the car. Caldwell had over $3,000 in cash on his person. Montgomery was found inside a neighbor's house where he had forced entry and was lying inside bleeding from a gunshot wound to his leg and other wounds to his head and arms.

When Tillman was stopped, he told police that the incident was about "some dope" and said they would find a black leather jacket with drugs in it at Caldwell's house. At Caldwell's house police found blood splattered around the house, bloody pants, a bloody t-shirt, and a bloody black leather jacket. When an officer picked up the jacket, a bag containing a substance suspected to be cocaine fell out of the jacket. The substance was weighed and tested at the Georgia State Crime Lab and found to be 247.9 grams of a substance containing 61 percent cocaine.

Montgomery testified for the State that, after he arrived at Caldwell's house, Caldwell accused him of stealing cocaine and a fight erupted. He said that Caldwell and Tillman beat him and ripped off his clothes and that Caldwell shot him in the leg.

The State also presented evidence in support of the second trafficking count charging that Caldwell had possession of over 400 grams of cocaine located in a room at the Guest House Inn which was rented by Tillman. When they were arrested, both Caldwell and Tillman were carrying card keys to Room 320 at the Guest House Inn. Police searched the room pursuant to a search warrant and found over 400 grams of a substance suspected to be cocaine along with cutting material for cocaine, three sets of electronic scales, plastic bags, and several guns. The substance was weighed and tested at the State Crime Lab and found to be over 400 grams of a substance containing at least 70 percent cocaine.

As similar transaction evidence, the State proved that Caldwell had a previous conviction under the Georgia Controlled Substances Act involving cocaine. Caldwell testified and denied that he was in possession of any of the cocaine. He claimed that Montgomery attacked him and that he shot Montgomery in self-defense. On cross-examination the State used Caldwell's prior statement to the police to impeach him and show that he told police he had been selling cocaine for Montgomery and was keeping the cocaine at the room rented by Tillman at the Guest House Inn.

1. Caldwell does not contest the sufficiency of the evidence. Nevertheless, to the extent the State relied on circumstantial evidence,

the evidence was sufficient to exclude every reasonable hypothesis save that of Caldwell's guilt. OCGA § 24-4-6. The evidence both direct and circumstantial was sufficient to allow a reasonable trier of fact to find Caldwell guilty of the offenses for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Caldwell contends that, contrary to the requirements of *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), the police obtained his pretrial custodial statement by continuing to interrogate him after he asked for his lawyer and that the trial court erred by denying his motion to suppress the statement.[3]

When Caldwell was taken into custody and informed of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), including his right to counsel and to have counsel present during questioning, he told the police officer that he wanted to speak with his lawyer. At that point the officer stopped asking questions, informed Caldwell of the charges, and told him if he wanted to change his mind and give a statement, that was up to him. In response, Caldwell told the officer that he had changed his mind and wanted to give a statement. The officer reread Caldwell his *Miranda* rights, and Caldwell waived those rights and responded to questions posed by the officer.

Under *Edwards v. Arizona*, once an accused being held in custody requests counsel pursuant to *Miranda*, all police interrogation must stop and may not resume without counsel present, unless the accused initiates further conversation with the police and voluntarily waives the invoked right. *Bailey v. State*, 273 Ga. 303, 305 (540 SE2d 202) (2001); *Connerly v. State*, 207 Ga. App. 498, 499 (428 SE2d 408) (1993). Caldwell clearly invoked his right to counsel during the questioning. The issue is whether the subsequent questioning was the proper result of a conversation initiated by Caldwell or whether the officer improperly continued to interrogate Caldwell after he invoked the right to counsel. The State contends that after Caldwell invoked the right to counsel the officer ceased all questioning and that informing Caldwell of the charges against him and telling him he could change his mind and give a statement if he chose to do so were not a form of continued interrogation.

We agree with the State. Only words or actions that the police

---

[3] The State used portions of the statement on cross-examination of Caldwell to impeach him. The statement was admissible for impeachment purposes even if it was obtained in violation of *Edwards v. Arizona*. *Hicks v. State*, 256 Ga. 266, 268 (347 SE2d 589) (1986). However, as the trial court instructed the jury, the statement could be considered not only for impeachment purposes but as substantive evidence. *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). Accordingly, consideration of Caldwell's *Edwards v. Arizona* claim is relevant to whether the statement was admissible as substantive evidence.

should have known were likely to elicit an incriminating response constitute interrogation. *Shields v. State*, 269 Ga. 177, 179 (496 SE2d 719) (1998); *Walton v. State*, 267 Ga. 713, 717-718 (482 SE2d 330) (1997); compare *Allen v. State*, 259 Ga. 63, 67 (377 SE2d 150) (1989). None of the statements made by the officer immediately after Caldwell invoked the right to counsel can be construed as interrogation under this standard. Caldwell initiated further conversation with the officer and waived the right he had invoked. *Byrd v. State*, 261 Ga. 202, 203 (403 SE2d 38) (1991). The trial court did not err by refusing to suppress the statement on this ground.

3. Caldwell also contends his statement was improperly induced by hope of a lighter sentence in violation of OCGA § 24-3-50 and that the trial court erred by denying his suppression motion on this ground.

The transcript of Caldwell's recorded statement shows that the questioning officer urged Caldwell to tell the truth if he wanted "[the officer] to be in a position to do anything to say that you cooperated. . . ." The officer said he was "the one who would put in a word for you," that "you can still help yourself . . . by telling us the truth," and that "we can put you in touch with other people you can talk to that might be willing to help you . . . like [the Georgia Bureau of Investigation]." When Caldwell asked what the GBI could do for him, the officer said that he could not speak for the GBI.

Urging Caldwell to tell the truth did not create a hope of a lighter sentence or any other hope of benefit in violation of OCGA § 24-3-50. *Lee v. State*, 270 Ga. 798, 800 (514 SE2d 1) (1999). Although the hope of a lighter punishment is a "hope of benefit" to which OCGA § 24-3-50 refers, none of the officer's additional statements to Caldwell amounted to a promise or statement that he would receive a lighter sentence if he told the truth. *State v. Roberts*, 273 Ga. 514, 516-517 (543 SE2d 725) (2001); compare *State v. Ray*, 272 Ga. 450, 452 (531 SE2d 705) (2000) and *Turner v. State*, 203 Ga. 770, 771 (48 SE2d 522) (1948). The trial court did not err by refusing to suppress the statement on this basis.

4. Contrary to Caldwell's contention, the trial court did not err by denying his motion to suppress the key to the Guest House Inn room where police found over 400 grams of cocaine.

The key was found in Caldwell's wallet after he was arrested during a standard inventory of his personal effects and was properly admitted into evidence. *Loden v. State*, 199 Ga. App. 683, 687-688 (406 SE2d 103) (1991).

5. Caldwell contends the trial court abused its discretion by refusing to allow him to pose a general question to the entire jury panel on voir dire as to whether anyone on the panel had ever been treated for any type of mental illness.

Whether a potential juror is competent to serve because of mental illness is a proper inquiry on voir dire. OCGA § 15-12-163 (b) (3); *Najmaister v. State*, 196 Ga. App. 345, 346 (396 SE2d 71) (1990). However, the fact that a person has been treated for mental illness does not render that person incompetent to serve as a juror. *Bolick v. State*, 244 Ga. App. 567, 570 (536 SE2d 242) (2000). Although the trial court prohibited the proposed general question to the entire panel, the record shows that the court agreed that defense counsel had the right during individual questioning to explore any concerns which might arise regarding the mental health of a potential juror. See *Tucker v. State*, 249 Ga. 323, 326-328 (290 SE2d 97) (1982).

The "scope of voir dire and the propriety of particular questions are left to the sound discretion of the trial court. . . ." *Pace v. State*, 271 Ga. 829, 836 (14) (524 SE2d 490) (1999). There is no evidence that the procedure adopted by the trial court prevented defense counsel from showing that a potential juror was incompetent to serve because of mental illness. We find no abuse of discretion.

6. There is no merit to Caldwell's contention that the trial court improperly limited his cross-examination of a police officer.

The trial court refused to allow defense counsel to cross-examine a police officer on issues which had already been decided by the court in a ruling on Caldwell's pretrial motion to suppress. Even if, as defense counsel claimed, he was attempting to develop new facts relating to the motion to suppress, this was not an issue for consideration by the jury which had no role in deciding factual issues for the motion to suppress. *Bassford v. State*, 192 Ga. App. 690 (386 SE2d 738) (1989). If defense counsel had new evidence to offer on the motion to suppress, he should have moved for the trial court to reconsider the motion and accept the new evidence outside the presence of the jury. *Pickens v. State*, 225 Ga. App. 792, 795-796 (484 SE2d 731) (1997); *Chastain v. State*, 158 Ga. App. 654 (281 SE2d 627) (1981).

7. The trial court did not err by allowing the State to use Caldwell's statement to police to impeach him on cross-examination.

Defense counsel made repeated general objections that the State was not using the statement for purposes of impeaching Caldwell, apparently claiming that Caldwell had not given any testimony that was inconsistent with the statement. To the contrary, the record shows that Caldwell's testimony was inconsistent with his prior statement on numerous points. For example, in his statement Caldwell admitted to police that he took cocaine to the Guest House Inn room where police found over 400 grams of cocaine, but at trial Caldwell said that he could not remember doing so, that he had only a vague memory of the hotel room, and that he had no knowledge of any cocaine at the hotel room. There was no error in allowing the State to impeach Caldwell with his prior inconsistent statement.

*Duckworth v. State,* 268 Ga. 566, 567-569 (492 SE2d 201) (1997).

8. Caldwell claims the trial court erred in admitting his prior drug conviction as similar transaction evidence because, instead of presenting testimonial evidence at the similar transaction hearing, the State relied on the prosecutor's representations as to the evidence.

Since this objection was not raised in the trial court, it presents nothing for appellate review. *Buckner v. State,* 219 Ga. App. 71, 73 (464 SE2d 11) (1995). Nevertheless, it was not improper for the trial court to conduct the similar transaction hearing by allowing the prosecutor to state the evidence in her place rather than requiring production of testimonial evidence. *Talmadge v. State,* 236 Ga. App. 454, 457-458 (512 SE2d 329) (1999).

9. Caldwell waived his claim that the trial court's contemporaneous limiting instruction on the similar transaction evidence was erroneous because no objection was made at trial. *Jones v. State,* 243 Ga. App. 374, 377 (533 SE2d 437) (2000).

10. Caldwell's claim that the indictment against him was defective as to form was also waived because he failed to file a written pretrial objection raising this claim. *Selley v. State,* 237 Ga. App. 47, 50-51 (514 SE2d 706) (1999).

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED MAY 16, 2001 —
RECONSIDERATION DENIED JUNE 7, 2001 — 

*Robert L. Mack, Jr.,* for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Elisabeth G. Macnamara, Assistant District Attorneys,* for appellee.