A01A0704. MONTGOMERY v. THE STATE.
(549 SE2d 463)

ANDREWS, Presiding Judge.

Maurice Montgomery appeals from the judgment of conviction entered on a jury verdict finding him guilty of trafficking in cocaine by possessing over 200 grams of a substance containing a mixture with a purity of ten percent or more of cocaine in violation of OCGA § 16-13-31. We find no error and affirm the judgment of conviction.

---

[1] *Battle v. State,* 235 Ga. App. 101, 102 (508 SE2d 467) (1998).

[2] Id.

1. Montgomery claims the evidence was insufficient to support the conviction.

In support of the trafficking charge, the State produced direct and circumstantial evidence showing that Montgomery went to Kendall Caldwell's house to complete a drug deal involving cocaine and that the deal went bad and the other parties involved, Caldwell and Jason Tillman, attacked and shot Montgomery.[1]

Caldwell's next-door neighbor, Esson, testified that he saw Montgomery arrive at Caldwell's house driving a Ford Explorer and saw him enter the house wearing a black leather jacket. A few minutes later Esson heard gunfire from Caldwell's house and saw Caldwell jumping out a window from the house. Esson then saw a man wearing a red sweatshirt run out of Caldwell's house and drive off in the Ford Explorer, followed by Caldwell, who drove off in a white car. Another neighbor, who lived two doors down from Caldwell's house, testified that shortly after he heard a gunshot, Montgomery appeared at his front door. Montgomery, who was bleeding and wearing only boxer shorts and one shoe, pounded on the door yelling that someone was trying to kill him.

Police responded to a 911 call reporting the shooting and describing the suspects and the cars they were driving. Based on this information, police stopped a Ford Explorer driven by Tillman, who was wearing a red sweatshirt, and stopped a white Acura driven by Caldwell. Tillman was covered in blood, and a Ruger .45 caliber handgun missing the ammunition clip was recovered from the front driver's side floorboard. Caldwell had $3,200 in his pocket, and a spent shell casing fell from his clothing when he exited the car. Following a trail of blood to a neighbor's house, police found that Montgomery had broken into the house and was lying inside barely conscious, bleeding from a gunshot wound to his leg and other wounds to his head and arms.

Inside Caldwell's house, police saw broken furniture and glass and blood splattered around the house. A bloody black leather jacket was lying on the floor with one sleeve pulled inside out. Also found in the house were pants with a gunshot hole through one of the legs, a torn t-shirt, a bloody sock, and an ammunition clip for a Ruger .45 caliber handgun. A wallet containing Montgomery's driver's license was found in the pants.

When a police officer picked up the black leather jacket, a bag containing a substance suspected to be cocaine fell out of the jacket. The substance was weighed and tested at the Georgia State Crime

---

[1] Montgomery, Caldwell, and Tillman were named as co-defendants in a six-count indictment. Montgomery was tried separately from his co-defendants after a severance motion was granted.

Lab and found to be 247.9 grams of a substance containing 61 percent cocaine.

Montgomery gave a statement in which he told police he was visiting with his friend, Caldwell, when he was attacked by Tillman and Caldwell for no apparent reason. He said he was beaten in the head with a gun, shot in the leg by Caldwell, and had his clothes pulled or ripped off, at which point he escaped and ran to an adjacent house for help. When asked about the black leather jacket found at Caldwell's house, Montgomery denied having any knowledge of the jacket or of the cocaine found in the jacket. Despite evidence of extremely cold weather conditions on the day at issue, Montgomery said he was wearing only a t-shirt when he arrived at Caldwell's house. In prior sworn testimony given by Montgomery at a bond hearing, he said that he did not see a black leather jacket inside Caldwell's house and that neither Caldwell nor Tillman was wearing a jacket.

In testimony given at the trial, Montgomery again denied knowledge of the black leather jacket or of the cocaine and repeated the version of events he gave in his earlier statement to police. He also presented witnesses who testified that he was not wearing a jacket on the day at issue.

On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the guilty verdict, and the defendant no longer enjoys a presumption that he is innocent of the charges. *Grier v. State*, 218 Ga. App. 637, 638 (463 SE2d 130) (1995). Although there were contradictions in the evidence, it was the jury's duty in reaching its verdict to weigh the evidence and determine the credibility of the witnesses. *Parker v. State*, 220 Ga. App. 303 (469 SE2d 410) (1996). The evidence, both direct and circumstantial, was sufficient to allow the jury to reach the reasonable conclusion that, when Montgomery arrived at Caldwell's house, he was wearing the black leather jacket that police later found inside the house containing over 200 grams of 61 percent pure cocaine; that Montgomery either brought the cocaine to the house or obtained it after he arrived there in the course of an attempted drug deal; and that the bloodstained jacket containing the cocaine was forcibly pulled off Montgomery's body, leaving one sleeve pulled inside out during a struggle that erupted during the attempted deal. The evidence was sufficient to exclude every reasonable hypothesis save that of Montgomery's guilt and to allow the jury to conclude that he was guilty beyond a reasonable doubt of trafficking in cocaine. OCGA § 24-4-6; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Montgomery claims the trial court erred by allowing a police officer to testify that the black leather jacket appeared to belong to Montgomery when this was an issue of fact for determination by the jury.

Before the officer gave the objected-to testimony on redirect, he had been subjected to the following cross-examination by defense counsel:

Q: And he [Montgomery] denied that the black jacket was his?
A: That's correct.
Q: At that point, you were not really sure who was in possession of this cocaine, were you? You had three suspects, right?
A: At that point, yes, sir.
Q: So you charged all of them, didn't you?
A: We charged the other two with the assault on Mr. Montgomery. We also charged them with the trafficking charge because it was found in that house, and we charged Mr. Montgomery because it appeared it was his jacket, and he was also in the house.
Q: When you say it was in his jacket, he denied that was his jacket, didn't he?
A: Yes, he did.
Q: And at that point, the young man, Esson, who had given a statement, said he saw someone getting out with a black jacket on?
A: Uh-huh (affirmative).

It was not improper for the prosecutor to follow up on the above line of questioning pursued on cross-examination that was intended to cast doubt on whether the police had any basis to charge Montgomery with trafficking in cocaine. On redirect, the prosecutor was allowed to show that the officer charged Montgomery with trafficking because, based on the information he gathered, he had a reasonable belief that the jacket containing the cocaine belonged to Montgomery. This was not an improper invasion of the jury's determination on an ultimate issue of fact. Compare *Williams v. State*, 254 Ga. 508, 510-511 (330 SE2d 353) (1985).

3. Montgomery contends the trial court should have sua sponte granted a mistrial when a police officer made a reference to statements given by Montgomery's co-defendants, who were tried separately and were not called by the State as witnesses at Montgomery's trial. The statements had been excluded as hearsay by the trial court's grant of a motion in limine.

The reference at issue came during cross-examination and immediately after the quoted sequence of testimony set forth in Division 2, above, in which defense counsel was attempting to show that police did not have any basis for charging Montgomery with trafficking in cocaine.

Q: When you say it was in his jacket, he denied that was his jacket, didn't he?
A: Yes, he did.
Q: And at that point, the young man, Esson, who had given a statement, said he saw someone getting out with a black jacket on?
A: Uh-huh (affirmative).
Q: That's why Mr. Montgomery was charged?
A: We had that statement as well as statements from the other two defendants.
The Court: Well, no. All we are talking about are the statements of witnesses that are here today.

Defense counsel made no objection or motion for a mistrial after the officer referred to "statements from the other two defendants." Assuming defense counsel was not required to object or move for a mistrial to preserve a claim that the motion in limine order was violated (*Reno v. Reno*, 249 Ga. 855 (295 SE2d 94) (1982)), and further assuming that the claimed error was not induced by counsel's question, we nevertheless conclude that the brief reference to the existence of the statements in this context was not error. Although the statements were excluded as hearsay by the grant of the motion in limine, the record shows that the officer did not refer to their substance in an effort to prove the truth of matters asserted therein, but referred to the statements only to explain why he arrested Montgomery and charged him with trafficking in cocaine. This testimony was admissible under OCGA § 24-3-2, not as hearsay, but as original evidence to explain conduct. *Davis v. State*, 242 Ga. 901, 906 (252 SE2d 443) (1979).

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED MAY 16, 2001 —
RECONSIDERATION DENIED JUNE 1, 2001 ▮

*Sexton & Sexton, Giles D. Sexton, James D. Sexton,* for appellant.
*J. Tom Morgan, District Attorney, Robert M. Coker, Elisabeth G. Macnamara, Assistant District Attorneys,* for appellee.