**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 17, 2021

# In the Court of Appeals of Georgia

A21A0353. GREEN v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Mark Holden Green guilty of aggravated child molestation and child molestation. Following the denial of his motion for new trial, Green appeals, contending that the trial court erred in admitting hearsay and other acts evidence, the evidence was insufficient to support his conviction for aggravated child molestation, and his trial counsel was ineffective. For the following reasons, we affirm Green's convictions.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, with the defendant no longer enjoying a presumption of innocence. See *Carolina v. State*, 276 Ga. App. 298, 300 (1) (623 SE2d 151) (2005). We neither weigh the evidence nor determine witness credibility, which are

tasks that fall within the exclusive province of the jury, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. Id.; see also *Whorton v. State*, 318 Ga. App. 885, 885 (735 SE2d 7) (2012).

So viewed, the evidence shows that Green is the step-father of the victims, A. G. and E. G. The victims' mother testified that when A. G. and E. G. were four years old, A. G. told her, "Mom, you know Mark has a long toot toot." The victims' mother explained that A. G. and E. G. use the term "toot toot" to refer to their private area. The victims' mother testified that A. G. said that Green "had stuck it in her mouth and did this motion," which she demonstrated, and "that yucky milk came out."

After the victims' mother reported the allegation to police, she took A. G. and E. G. to a child advocacy center. At the child advocacy center, both children were interviewed by an expert in forensic interviewing. The forensic interviewer testified that she had conducted approximately 600 forensic interviews. Recordings of the forensic interviews of A. G. and E. G. were played for the jury. The forensic interviewer first testified about her interview of E. G. After explaining that E. G. referred to the male anatomy as a "toot toot tail" because it looks like a tail, she testified that E. G. told her that there was a "boo boo" on Green's "toot toot tail" and

2

that she "bit him there on his toot toot tail." E. G. also referred to something being sticky like peanut butter, which the forensic interviewer testified she thought would have been ejaculation.

The forensic interviewer then testified about her interview of A. G. A. G. told the forensic interviewer about "yucky milk" and motioned with her mouth like she was spitting it out. When the forensic interviewer asked A. G. about Green's "toot toot," A. G. said, "He did like this." The forensic interviewer testified that she inferred from A. G.'s statements and gestures that Green put his penis in A. G.'s mouth.

A sexual assault nurse examiner testified that she had examined A. G. and E. G. A. G. told the nurse examiner, "Yucky milk came out of Mark's toot, toot. . . . He put it in my mouth." A. G. also told her that Green "has a long tail called a toot toot that yucky white milk comes out of," that "he puts the yucky milk in my mouth," and "it tastes bad and I spit it in the trash can." When the nurse examiner asked A. G. to describe what the "toot toot" looks like, A. G. said, "It's long like a tail and has a hole in the end of it. He does his hands like this." The nurse examiner testified that A. G. made motions with her hands as if masturbating a penis. A. G. told her, "That's when

3

the yucky white milk comes out of the end. . . . I don't like it when he does that. It tastes bad."

At the end of E. G.'s exam, the nurse examiner asked E. G. if she had ever seen Green's private areas. The nurse examiner testified that E. G. told her, "He has a tail, he puts his hand around his 'toot toot,'" motioned with her hands as though masturbating, and said, "Pee pee came out of it. It went all over my shorts and I had to change clothes."

A nurse who examined Green testified that he has a condition referred to as hypospadias, where the urethral opening of the penis can be at various locations of the penis rather than the normal location, which is the tip of the penis. According to the nurse, Green's urethral opening is between the head of the penis and the area just below the head of the penis. She also testified that Green has a skin pigment condition referred to as vitiligo, and that he had pigmentation loss in an area that she pointed to in a picture showing Green's penis and on his scrotal sac.

Green was indicted for aggravated child molestation and child molestation. After a jury trial, Green was found guilty of both offenses. This appeal followed the denial of Green's motion for new trial.

4

1. Green contends that the trial court erred by allowing hearsay statements of A. G. to be admitted into evidence.[1] However, Green did not preserve this issue for appellate review.

At the time of Green's offenses in 2016, OCGA § 24-8-820, the child hearsay statute, provided:

> A statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to whom made if the proponent of such statement provides notice to the adverse party prior to trial of the intention to use such out-of-court statement and such child testifies at the trial, unless the adverse party forfeits or waives such child's testimony as provided in this title, and, at the time of the testimony regarding the out-of-court statements, the person to whom the child made such statement is subject to cross-examination regarding the out-of-court statements.

"[T]he trial court has broad discretion in determining the admissibility of child hearsay evidence, and we will reverse a trial court's ruling on the admissibility of statements [under OCGA § 24-8-820] only if the trial court abused its discretion."

[1] "For convenience of discussion, we have taken the enumerated errors out of the order in which [Green] has listed them. . . ." *Pugh v. State*, 347 Ga. App. 710, 711 (1), n. 5 (820 SE2d 766) (2018) (citation omitted).

*Allison v. State*, 356 Ga. App. 256, 261 (1) (846 SE2d 222) (2020) (citation and punctuation omitted).

When the victims' mother testified, Green objected to the admission of hearsay statements by A. G. After the State responded that A. G. was present and able to testify, the trial court admitted the hearsay statements over trial counsel's objection. When A. G., who was six years old at the time of trial, took the stand, she answered voir dire questions from the State and Green's trial counsel. Green's trial counsel objected to A. G. being allowed to testify on the basis that he was not satisfied that A. G. knew the difference between the truth and a lie. The trial court allowed A. G.'s testimony, finding that she knew "the difference in right and wrong, truth and a lie." The prosecutor then attempted to swear A. G. in as a witness:

> Q: Do you swear or affirm testimony or the conversation me and you are about to have in front of this jury, is the truth?
> A: I don't know.
> Q: You don't know? You're not [going to] tell the truth while we're talking?
> A: No.
> Q: You're not [going to] tell me the truth?
> A: I just don't know some things are different.
> Q: Some things are different? Can you tell me what's different?
> A: Like, I never learned jump roping, because that's hard.

6

Q: Okay. I can get that. What if I said, I'm not [going to] ask you about jump roping or hula hooping in front of the jury today? Because I'm not [going to] ask you anything like that. I'm just [going to] ask questions [about] what happened between you and Mark. Is that okay? Will you tell the truth then?

A: Yes.

Q: Okay. Let's raise our hand again, the right one. There you go.

. . .

Q: Do you swear or affirm the testimony you are about to give, the coversation me and you are [going to] have today in front of the jury, concerning Mark, is the truth?

A: I don't know.

Q: You don't know again? No? You just don't know?

A: Yeah, because things are different, but I don't know how to do or I just don't know what it means.

Green's trial counsel requested a bench conference and stated, "I don't think she can testify on what's the truth and what's a lie." The trial court responded, "Okay." Neither the prosecutor nor Green's trial counsel pursued asking further questions of A. G., who was allowed to leave the witness stand.

Green argues that because A. G. "was incapable of taking the oath to tell the truth, she should be considered . . . not being 'available' to testify at trial and therefore the child hearsay statute would not apply." Although Green objected to the admission of A. G.'s hearsay statements when the victims' mother testified, he did not

7

renew his objection when A. G. did not testify. By not renewing his objection, he failed to preserve this issue for appellate review. See *Jackson v. State*, 222 Ga. App. 843, 847 (4) (476 SE2d 615) (1996) (defendant failed to preserve the issue for appellate review when he did not renew his hearsay objection when the declarant did not testify).

2. In a closely related enumeration, Green argues the evidence was insufficient to support his conviction for aggravated child molestation because "[t]he only evidence concerning any inappropriate conduct in relation to A. G. came by way of hearsay statements[.]" We disagree.

"A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which . . . involves an act of sodomy." OCGA § 16-6-4 (c). And sodomy is committed when a person "performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a) (1). Green was charged with aggravated child molestation for "commit[ting] an immoral

8

and indecent act, to wit: sodomy, against [A. G.], a child under the age of sixteen 16 years, with the intent to arouse and satisfy the sexual desires of the accused or the child, in that the accused did perform a sexual act, said act involving the sex organ of the accused and the mouth of the said [A. G.]" The evidence was sufficient for the jury to find Green guilty beyond a reasonable doubt of aggravated child molestation as charged in the indictment.

As discussed in Division 1, Green failed to preserve for appellate review the issue of whether A. G.'s hearsay statements were properly admitted under the child hearsay statute. Consequently, Green has not established that the trial court erred by admitting A. G.'s hearsay statements. The victims' mother testified that A. G. said that Green had stuck his "toot toot" in her mouth. It is well settled that "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8. The victims' mother's testimony, along with A. G.'s forensic interview and testimony by the nurse examiner and the forensic interviewer, was sufficient to sustain Green's conviction for aggravated child molestation. See *Allison*, 356 Ga. App. at 261-263 (2) (a) (testimony of victim's mother and forensic psychologist as to what victim told them defendant did was sufficient to sustain defendant's child molestation conviction).

3. Prior to trial, the State filed a notice of intent to present evidence of prior bad acts Green had committed against his adopted daughter, K. G., pursuant to OCGA § 24-4-414 ("Rule 414"). At a pre-trial hearing, the State informed the trial court that it was seeking to use the prior acts evidence to show propensity. Over Green's objection, the trial court allowed the State to present the other acts evidence. Green contends that the trial court erred in admitting the other acts evidence. We disagree.

K. G., who was 24 years old at the time of trial, testified that Green, who was her step-father at the time,[2] began abusing her when she was 11 years old. She testified that the abuse started as just touching. K. G. would sleep with her mother, who was sick with cancer, and she would wake up and Green's hand would be down her pants. K. G. testified that over the next months and year it progressed to the point where K. G. "would have to perform oral. I would have to touch him as well." K. G. testified that the abuse "progressed into penetration . . . [v]aginal and sodomy." The abuse continued until she was 17, when she moved out of state. K. G. testified that Green eventually started giving her sleeping pills, and there were times when Green raped her while she was asleep. K. G. also testified that Green "has a scar underneath of his penis" that she first noticed when she was around 13 or 14 years old.

_____

[2] K. G. testified that Green adopted her the day after she turned 18.

10

Rule 414 (a) provides: "In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." Rule 414 supersedes the provisions of OCGA § 24-4-404 (b) in child molestation cases and "create[s] a rule of inclusion with a strong presumption in favor of admissibility as [Rule 414] provides that such evidence 'shall be admissible.'" *Dixon v. State*, 341 Ga. App. 255, 258 (1) (800 SE2d 11) (2017) (citations and punctuation omitted). Evidence admitted under Rule 414 is not subject to the limitations of OCGA § 24-4-404 (b) and "may be considered for its bearing on any matter to which it is relevant," including propensity. *State v. McPherson*, 341 Ga. App. 871, 873 (800 SE2d 389) (2017). And, as we have explained, under Rule 414 (a),

> showing a disposition toward molestation is a relevant purpose and not unfairly prejudicial in light of the nature of that conduct. Thus, evidence that a defendant engaged in child molestation in the past is admissible to prove that the defendant has a disposition of character that makes it more likely that he did commit the act of child molestation charged in the instant case.

Id. at 873-874 (citation and punctuation omitted).

11

> Nevertheless, evidence that is admissible under [Rule 414] may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. OCGA § 24-4-403.

*Dixon v. State*, 350 Ga. App. 211, 213 (1) (828 SE2d 427) (2019) (citations and punctuation omitted). "This determination lies within the discretion of the trial court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." Id. at 214 (1) (citations omitted). "We review the trial court's decision on whether to admit evidence under Rule 414 for a clear abuse of discretion." *Jackson v. State*, 342 Ga. App. 689, 691 (805 SE2d 457) (2017).

Green concedes that, based on K. G.'s testimony, the State met its burden by proving by the preponderance of the evidence that Green committed the prior bad act and that propensity is a proper purpose under Rule 414. However, he argues that the prior acts are not sufficiently similar to the current allegations to allow a jury to find that he had a propensity to commit these acts. According to Green, the evidence of prior acts was too remote in time to be probative. Green also argues that the trial court

12

erred in concluding that the probative value of this evidence was not substantially outweighed by its prejudicial effect.

Upon review, we conclude that the trial court did not abuse its discretion in admitting evidence regarding Green's prior acts under Rule 414[3] because the evidence was relevant to show Green's propensity to commit the crimes. There was sufficient similarity between the prior acts against K. G. and the alleged offenses against A. G. and E. G., all of whom were children in Green's care, to allow for the admission of the evidence regarding the prior acts. Although Green argues that the evidence of prior acts was too remote in time to be probative, temporal remoteness does not demand exclusion. See *Eubanks v. State*, 332 Ga. App. 568, 569-570 (1) (774 SE2d 146) (2015) (act committed 17 years prior to trial was admissible).

"As noted above, the prejudicial impact of evidence of similar transactions in child molestation cases is generally considered to be outweighed by its probative

---

[3] Although the trial court's oral ruling does not state which Code section it relied on in allowing the State to present the other acts evidence, in its order denying Green's motion for new trial, it stated: "The trial court properly allowed the evidence under OCGA § 24-4-414, which alone would have allowed the admission of the proposed evidence. The trial court also analyzed the admissibility of the evidence under OCGA §§ 24-4-403 and 24-4-404 (b) finding the evidence was admissible under both those Code sections." Because we agree that the other acts evidence was admissible under Rule 414, we need not address whether it was also admissible under OCGA § 404 (b).

13

value in demonstrating an accused's disposition toward committing molestation." *McPherson*, 341 Ga. App. at 875-876. There has been no showing that the evidence would confuse the issues or mislead the jury. Nor has there been a showing that the probative value of the evidence would otherwise be substantially outweighed by the danger of unfair prejudice. In light of the "strong presumption in favor of admissibility," we cannot say that the trial court abused its discretion in allowing the other acts evidence to be admitted. *Wilkerson v. State*, 356 Ga. App. 831, 834 (1) (849 SE2d 677) (2020).

4. Green argues the trial court erred in allowing hearsay statements of K. G. into evidence. We disagree.

"The admission of evidence is committed to the sound discretion of the trial court, and the trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion." *Lyons v. State*, 309 Ga. 15, 21 (4) (843 SE2d 825) (2020).

A detective testified that the victims' mother gave him K. G.'s phone number and told him that he needed to call her. Over Green's hearsay objection, the detective testified that K. G. told him that when she was about 12 years old, Green started touching her and having her touch him. From the touching, the abuse escalated to oral

14

sex and then to penetration. The detective asked K. G. if she would be willing to come to Georgia to testify, and she told him that she would. He then asked her, "Is there anything remarkable about [Green's] penis?" She told him that it has a scar underneath it. The detective testified, "In my mind, there's my boo boo." To confirm this, the detective obtained a search warrant to get pictures of Green's penis. Over objection, the pictures were admitted into evidence.

As discussed in Division 3, K. G.'s testimony was properly admitted under Rule 414. Pretermitting whether the detective's testimony regarding K. G.'s statements to him were admitted for the truth of the matter asserted, the testimony is cumulative of the direct testimony by K. G.

> Under the current Evidence Code, error shall not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected. In determining whether trial court error was harmless, we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. Generally, the erroneous admission of hearsay is harmless where substantial, cumulative, legally admissible evidence of the same fact is introduced.

15

*Lyons*, 309 Ga. at 22 (4) (citations and punctuation omitted). Here, the detective's testimony about what K. G. told him added nothing to what the jury learned from K. G.'s testimony. Thus, even if the detective's testimony regarding what K. G. told him was admitted in error, the admission of the detective's testimony was harmless. Id. We therefore conclude that any error in admitting the detective's testimony does not require reversal.

5. Green contends that his trial counsel was ineffective for failing to object to hearsay statements of K. G. and failing to object and request a mistrial when A. G. was unable to testify and he was denied his constitutional right to confront witnesses against him.

> To establish that his trial counsel was constitutionally ineffective, Appellant must prove both deficient performance by counsel and resulting prejudice. To show that his lawyer's performance was deficient, Appellant must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. This is no easy showing, as the law recognizes a "strong presumption" that counsel performed reasonably, and Appellant bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

16

Even when a defendant has proved that his counsel's performance was deficient in this constitutional sense, he also must prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, Appellant must demonstrate a "reasonable probability" of a different result, which, the United States Supreme Court has explained, is a probability sufficient to undermine confidence in the outcome.

The reviewing court need not address both components of the inquiry if the defendant makes an insufficient showing on one. In all, the burden of proving a denial of effective assistance of counsel is a heavy one, and Appellant has failed to carry that burden.

*Brown v. State*, 302 Ga. 454, 457-458 (2) (807 SE2d 369) (2017) (citations and punctuation omitted). To prove deficient performance, a defendant must show by clear and convincing evidence that the performance of his lawyer was not within the range of reasonable professional lawyering. *Jones v. State*, 318 Ga. App. 342, 346 (3) (733 SE2d 400) (2012). "This requires a showing of errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Abernathy v. State*, 357 Ga. App. 732, 738 (2) (849 SE2d 489) (2020).

Whether a trial attorney renders constitutionally ineffective assistance is a mixed question of law and fact. "The proper standard of review requires that we accept the [trial] court's factual findings unless clearly erroneous, but we

independently apply the legal principles to the facts." *Head v. Carr*, 273 Ga. 613, 616 (4) (544 SE2d 409) (2001). After reviewing Green's claims in accordance with these standards, we conclude that Green has not met his burden of demonstrating that his trial counsel was ineffective.

(a) *Failure to object to hearsay statements of K. G.*

The victims' mother testified that she called K. G. to let her know that Green would possibly be going to jail and explained why. According to the victims' mother, K. G. got upset and started crying. K. G. hung up the phone, but when the victims' mother immediately got back in contact, "she said that [Green] had raped and molested her from, I think, age 13 to 17." The victims' mother testified that right after she learned this from K. G., she called the detective to let him know that A. G. and E. G. "[were not] the only ones that this had happened to."

Pretermitting whether trial counsel was deficient for failing to object to this testimony, Green has failed to show prejudice. See *Ary v. State*, ___ Ga. App. ___, ___ (4) (b) (____ SE2d ___) No. A21A0165, 2021 WL 2100409, at *9 (4) (b) (2021) (even assuming trial counsel's performance was deficient, defendant did not establish that his counsel was constitutionally ineffective because defendant did not show he was prejudiced by counsel's deficient performance). K. G. testified that Green started

18

molesting her when she was 11 years old, that the abuse continued until she was 17 years old, and that he raped her. "To establish prejudice for purposes of an ineffective assistance of counsel claim, [Green] must show 'a reasonable probability' that the jury would have reached a different result" but for his trial counsel's error. Id. Green has not demonstrated a reasonable probability of a different result if the victims' mother's testimony had not been admitted. See *Brown*, 302 Ga. at 457 (2).

(b) *Failure to object and request a mistrial when A. G. did not testify.*

As discussed above, the record shows that trial counsel objected to the admission of hearsay statements by A. G. during the victims' mother's testimony. After confirming that A. G. was present and able to testify, the trial court admitted the hearsay statements over trial counsel's objection. Green argues that his trial counsel was ineffective because he failed to renew his objection to the admission of hearsay statements by A. G. or move for a mistrial when A. G. did not testify. We disagree.

In its order denying Green's motion for new trial, the trial court found as follows:

In this case, it was trial counsel's strategy NOT to cross examine the two victims. Further, [A. G.] was present to testify and was deemed competent to testify. She became confused and was disconcerted. At trial, the prosecution, trial counsel, and the trial court agreed not to push

19

her any further. Trial counsel effectively waived his opportunity to cross examine [A. G.] which was his strategy. Under this strategy, [A. G.'s] inability to testify supported trial counsel's strategy. . . . Defense counsel did not pursue [A. G.'s] testimony which was consistent with his strategy.

These findings are supported by the record. Green's trial counsel did not cross examine E. G. even though she testified at trial. He testified at the new trial hearing that it was his strategy not to cross examine the two victims because "certainly the last thing you want to do is look like you're beating up on young girls," which could alienate the jury. In fact, trial counsel was planning to waive the testimony of the two victims because he believed they were too young to testify. He testified that his focus was on the inconsistencies in the girls' statements.

"A strong presumption exists that counsel's conduct falls within the range of reasonably professional conduct," *Lawson v. State*, 296 Ga. 1, 7 (2) (b) (764 SE2d 816) (2014), and trial counsel's decision in this case not to pursue A. G.'s testimony at trial was a reasonable trial strategy. See *Campos v. State*, 263 Ga. App. 119, 122 (587 SE2d 264) (2003) (counsel not ineffective for declining to call the child victim as a witness for purposes of cross-examination). Renewing his objection to the admission of hearsay statements by A. G. or moving for a mistrial when A. G. did not

20

testify would have been inconsistent with this strategy. Accordingly, Green has failed to establish deficient performance on this ground. See *Lawson*, 296 Ga. at 7 (2) (b).

Moreover, Green has failed to demonstrate that the outcome of the trial would have been different if his trial counsel had renewed his objection to the admissibility of A. G.'s hearsay statements or moved for a mistrial when A. G. did not testify. A judge has broad discretion to allow the recall of a witness, even one that has been excused. *Watkins v. State*, 253 Ga. App. 382, 384 (1) (559 SE2d 133) (2002). And, a child victim is allowed to testify regardless of the child's ability to understand the nature of an oath. See OCGA § 24-6-603 (b); *Gibby v. State*, 213 Ga. App. 20, 22 (2) (d) (443 SE2d 852) (1994) (decided under former OCGA § 24-9-5 (b)); *Bright v. State*, 197 Ga. App. 784, 784 (3) (400 SE2d 18) (1990) (same). The child simply becomes an unsworn witness. *Bright*, 197 Ga. App. at 784 (3). Thus, if Green's trial counsel had renewed his objection to the admissibility of A. G.'s hearsay statements or moved for a mistrial, the trial court could have allowed the State to recall A. G. to testify as an unsworn witness. Consequently, Green has failed to prove prejudice. See *Brown*, 302 Ga. at 457 (2).

*Judgment affirmed. McFadden, C. J., and Rickman, P. J., concur.*