300 Ga. 800
FINAL COPY

S16A1532. RAINWATER v. THE STATE.

BOGGS, Justice.

Appellant Kevaughn Rainwater was acquitted of malice murder, but found guilty of felony murder, aggravated assault, and possession of a firearm during the commission of a felony, in the shooting death of Antavious Maddox.[1] He now appeals, challenging the sufficiency of the evidence, claiming violations of the continuing witness rule, and contending he received ineffective assistance of counsel. For the following reasons, we affirm.

1. Rainwater first argues that the evidence was insufficient to sustain his convictions either as a principal or a party to the crimes. Viewed in the light most favorable to the verdict, the evidence at trial established as follows:

---

[1] The crimes occurred on June 24, 2012. On November 15, 2012, a DeKalb County grand jury indicted Rainwater on charges of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. Following a June 2013 jury trial, Rainwater was acquitted of malice murder but found guilty of the remaining charges. He was sentenced to life in prison plus five years. Rainwater's motion for new trial was filed on July 16, 2013, amended by new counsel on April 8, 2015, and denied on September 16, 2015. His notice of appeal was filed on October 16, 2015. The case was docketed in this Court for the September 2016 term and submitted for a decision on the briefs.

Rainwater went to the victim's apartment in DeKalb County to purchase marijuana twice on June 24, 2012, the day the victim was shot multiple times and died from his wounds. Three eyewitnesses — Evander Spears, Travon Parham, and Damon Holmes — placed Rainwater at the scene of the shooting.[2] Spears, who lived in an apartment building across from the victim's apartment, testified that he heard a gunshot and, walking out of his apartment, saw Rainwater running with a gun into the apartment complex parking lot. Spears stated he also saw a second man standing near a dumpster in the parking lot and a third man arguing with the victim upstairs on the balcony outside the victim's apartment. According to Spears, as the victim and the third man began to tussle, the victim attempted to get away by jumping over the balcony railing onto the stairs below. Spears then heard four more gunshots and, as the third man ran into the victim's apartment and the second man yelled for the others to "come on," Rainwater also yelled "everybody come on," and walked over to where the victim was lying on the stairs screaming and begging for his life. The third man exited the victim's apartment with a bag that he tossed to Rainwater, and all

_____

[2] All three witnesses picked Rainwater out of photographic lineups following the shooting, and Spears and Parham made in-court identifications of Rainwater.

three men ran into the woods.

Parham and Holmes lived in the apartment next door to the victim and also testified at the trial. According to Parham, on the day of the shooting he saw the victim talking with Rainwater and two other individuals on the balcony outside the apartment. Parham left his apartment soon thereafter but, upon his return, saw the same three individuals walking from the area. Ten to fifteen minutes later while he was in his apartment, Parham heard gunshots. Holmes, who was in the apartment with Parham, testified that he had been asleep, but was awakened by the gunshots. Holmes stated that, after hearing the shots, he looked out his window and saw the victim sitting in the stairwell screaming for help and begging "don't shoot me any more." Holmes also stated he saw Rainwater come down the stairs and look at the victim "dead in his face" with a "cold look" before walking away.

In his statement to police, Rainwater claimed that he was in Atlanta with his girlfriend on the day of the shooting. However, his girlfriend lived in Atlanta outside of DeKalb County, and cell phone records placed Rainwater's cell phone in DeKalb County shortly before and after the shooting. At trial, Rainwater testified he later determined that he was not with his girlfriend when police

3

showed him the phone records, and responded affirmatively when asked if he had his "weekends mixed up[.]" He then explained that he was at a friend's house during the shooting.

Rainwater argues that there was no evidence that he shot the victim and that he was merely present at the scene."While mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." (Citation omitted.) Belsar v. State, 276 Ga. 261, 262 (1) (577 SE2d 569) (2003). The evidence outlined above was sufficient to authorize a rational jury to find beyond a reasonable doubt that Rainwater was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); see also Belsar, supra (evidence established more than defendant's mere presence at the scene of the crimes); OCGA § 16-2-20.

2. Rainwater asserts that the trial court erred in allowing State's Exhibits 20, 28, and 29 to go out with the jury in violation of the continuing witness rule. These exhibits, photographic lineup admonition forms, contained handwritten statements by Parham, Spears, and Holmes, explaining the actions of Rainwater

they witnessed on the day of the murder, and were allowed to go back with the jury with no objection from counsel. Rainwater asserts that the trial court erred in its motion for new trial order in finding no plain error.[3]

> [P]lain error requires a clear or obvious legal error or defect not affirmatively waived by the appellant that must have affected the appellant's substantial rights, i.e., it affected the outcome of the trial-court proceedings. Stated more succinctly, the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings. If the failure to give an instruction is shown to constitute such an error, the appellate court may remedy the error by exercising its discretion if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) Bradford v. State, 299 Ga. 880, 885-886 (6) (b) (792 SE2d 684) (2016). "Satisfying all four prongs of this standard is difficult, as it should be." (Citations and punctuation omitted.) State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

In Georgia, the continuing witness objection is based on the

---

[3] Rainwater was tried in June 2013, after the effective date of the new Evidence Code authorizing plain error review of evidentiary rulings not objected to at trial. OCGA § 24-1-103. We do not decide here whether allowing written testimony to go back with the jury in violation of the continuing witness rule is an evidentiary ruling requiring, as the parties argue, a review for plain error. Because, as explained herein, there is no plain error, we need not decide this issue. See Collier v. State, 288 Ga. 756, 759 (4) (707 SE2d 102) (2011). As noted in Paul S. Milich, Georgia Rules of Evidence § 19:8, at 750 (2014-2015 ed.), however, the continuing witness rule itself was unaffected by the enactment of the new Evidence Code.

notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once. The types of documents that have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations.

(Citations and punctuation omitted.) Davis v. State, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009). To the extent the photographic lineup admonition forms contained statements beyond the identification of Rainwater, allowing them to go back with the jury violated the continuing witness rule. See Roberts v. State, 282 Ga. 548, 552 (10) (651 SE2d 689) (2007) (error to allow written report of questioned-documents examiner to go out with jury); compare Dockery v. State, 287 Ga. 275, 277 (4) (695 SE2d 599) (2010) (no continuing witness rule violation where lineup forms went out with jury containing only witness's name and signature, number of photograph selected, date and time, and name of detective who conducted lineup). But Rainwater has not made an affirmative showing that the "error probably did affect the outcome below." (Citation and punctuation omitted.) Shaw v. State, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013). During trial, defense counsel cross-examined Holmes about his

6

statements on the admonition form explaining his identification of Rainwater in the lineup. Therefore, any undue emphasis potentially placed upon the statement during deliberations was overshadowed by the greater emphasis placed on the statement at trial by defense counsel. The statement on Parham's form stated only that the person he chose in the lineup was "standing outside my door talking to my neighbor." And although the brief statements on Spears's form gave more detail of Rainwater's actions than the statements on Holmes's and Parham's forms, those statements were still much less detailed than Spears's oral testimony. See Roberts, supra, 282 Ga. at 552-553 (10) (decided prior to enactment of new Evidence Code; considering weight of direct evidence against defendant and fact that report was brief and conclusory and less detailed than witness's oral testimony, highly probable that error in permitting report to go out with jury did not contribute to verdict). Moreover, three eyewitnesses placed Rainwater at the scene. One witness testified that after he heard a gunshot, Rainwater ran past him holding a gun, and that Rainwater took a bag from another man, who had been in the victim's apartment, before running into the woods. And two witnesses testified that Rainwater stood over the victim as the victim screamed for help.

In light of the strong evidence that Rainwater was a party to the crimes, and trial counsel's cross-examination of one of the witnesses regarding the statements made on the photographic lineup admonition form, there is no plain error here. See Gates v. State, 298 Ga. 324, 327-328 (3) (781 SE2d 772) (2016).

3. Rainwater contends that trial counsel was ineffective in failing to object to the photographic lineup admonition forms going out with the jury in violation of the continuing witness rule. Under the standard of Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), "[i]n order to prevail on a claim of ineffective assistance of counsel, [Rainwater] must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense." (Citations omitted.) Simmons v. State, 299 Ga. 370, 375 (3) (788 SE2d 494) (2016).

We have concluded in Division 2 above that there was no plain error in allowing the forms to go out with the jury. We likewise conclude that Rainwater has failed to show that counsel's failure to object, even if deficient, affected the outcome of the proceedings. See Johnson v. State, 295 Ga. 615, 619 (3) (a) (759 SE2d 837) (2014). As explained in Division 1, there was strong evidence that Rainwater was a party to the crimes. See  Hernandez v. State, 299 Ga. 796, 801

(4) (792 SE2d 373) (2016) (given collective weight of evidence, defendant cannot demonstrate reasonable probability that outcome of trial would have been more favorable but for counsel's alleged deficiencies).

4. Rainwater argues that the court committed plain error in its response to questions from the jury. During its deliberations, the jury asked the trial court: "Can you be guilty of possession of a firearm during the commission of a felony . . . that involves a firearm if you don't personally have a gun on you . . . or in arm's reach?" The jury also informed the trial court: "We are confused about whether, on page 13 [of the jury charge], paragraphs two and three apply to all charges." The trial court responded:

> I'm going to answer, well, I'll call it the second question. And yes, it applies to all charges. And I will re-read it, on page 13, it says: Every party to a crime may be charged with and convicted of commission of the crime. A person is a party to a crime only if that person directly commits the crime, intentionally helps in the commission of the crime, intentionally advises, encourages, hires, counsels or procures another to commit the crime, or intentionally causes some other person to commit the crime under such circumstance that the other person is not guilty of any crime either in fact or because of legal incapacity. Any party to a crime who did not directly commit the crime may be . . . prosecuted for commission of the crime upon proof that the crime was committed and that the person was a party to it, even though the person alleged to have directly committed the crime has been prosecuted or convicted — has been convicted of a different crime or degree of

9

crime, is not amenable to justice or has been acquitted.

> Although I just re-read, that was on the bottom of page 13. But I'm not highlighting any particular portion. You are to consider the charge in its entirety and it is up for you as members of the jury to make a decision on what you want to do.

> You can go back into the jury room and continue your deliberation.

Rainwater argues that the court failed to answer the first question and the rereading of the charge on parties to a crime placed undue emphasis on a legal principle already before the jury, and was an incorrect statement of law.[4] Rainwater stated he had no objection to the court's response to the jury, thus we review the court's recharge only for plain error. See Guajardo v. State, 290 Ga. 172, 175-176 (4) (718 SE2d 292) (2011).

Although the court stated that it was going to answer the second question, the recharge to the jury also answered the first question — whether Rainwater

---

[4] The portion of the charge complained of is a pattern charge entitled "Principal, Failure to Prosecute; Other Involved Persons," and provides:

> Any party to a crime who did not directly commit the crime may be prosecuted for commission of the crime upon proof that the crime was committed and that the person was a party to it, even though the person alleged to have directly committed the crime has not been prosecuted or convicted, has been convicted of a different crime or degree of crime, is not amenable to justice, or has been acquitted.

Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.42.11. See also OCGA § 16-2-21 ("Prosecution of parties who did not directly commit the crime").

could be found guilty of possession of a firearm even if he did not physically possess the weapon. See, e.g., Salahuddin v. State, 277 Ga. 561, 564-565 (4) (592 SE2d 410) (2004) (trial court did not abuse its discretion in recharging jury on party to a crime where jury asked: "If the jury is not certain which perpetrator shot a victim, but the perpetrator was present, are they guilty by association?" (Punctuation omitted.)); see also Braithwaite v. State, 275 Ga. 884, 888 (8) (572 SE2d 612) (2002) (defendant had possession of firearm, whether physically or constructively as party to crime). Rainwater also argues that the recharge unnecessarily emphasized the principle of party to a crime. But "[w]here the jury requests further instructions upon a particular phase of the case, the court in [its] discretion may recharge them in full, or only upon the point or points requested." (Citation and punctuation omitted.) Salahuddin, supra, 277 Ga. at 564-565 (4); Lobdell v. State, 256 Ga. 769, 776 (13) (353 SE2d 799) (1987).

We agree, however, that the court's recharge contained an error. In an inadvertent slip of the tongue, the court omitted the word "not" from the end of the pattern charge: ". . . even though the person alleged to have directly committed the crime has been prosecuted or convicted," rather than ". . . even though the person alleged to have directly committed the crime has *not* been

11

prosecuted or convicted." (Emphasis supplied.) See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.42.11; see also OCGA § 16-2-21. However, this error did not clearly mislead or confuse the jury. And, immediately after this omission, the court correctly recited the remainder of the pattern charge: " . . . , has been convicted of a different crime or degree of crime, is not amenable to justice, or has been acquitted." The court's recharge, taken as a whole, and considering the court's initial charge on these principles which contained no omissions and which the jury had with it during deliberations, did not constitute plain error requiring reversal. See Pitchford v. State, 294 Ga. 230, 238-239 (5) (751 SE2d 785) (2013) (court's insertion of the word "not" into jury charge was slip of tongue; no plain error when viewing the jury charge in its entirety), disapproved on other grounds, State v. Chulpayev, 296 Ga. 764, 783 (3) (b) (770 SE2d 808) (2015); see also Delacruz v. State, 280 Ga. 392, 398 (5) (627 SE2d 579) (2006) (decided prior to effective date of plain error rule as to charge; verbal inaccuracy from slip of tongue which does not clearly mislead or confuse jury not reversible error).

Judgment affirmed. All the Justices concur.

Decided March 6, 2017 – Reconsideration denied March 30, 2017.

Murder. DeKalb Superior Court. Before Judge Adams.

Frances C. Kuo, for appellant.

Sherry Boston, District Attorney, Gerald Mason, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.