309 Ga. 15
FINAL COPY

S20A0536. LYONS v. THE STATE.

BETHEL, Justice.

Joseph Milton Lyons appeals his convictions for the felony murder of Tony Lyons, two counts of aggravated assault, one count of home invasion, and two counts of possession of a firearm during the commission of a felony.[1] Lyons argues that the trial court made

---

[1] The crimes occurred on November 30, 2015. On September 28, 2017, a Henry County grand jury indicted Lyons on one count of malice murder for the death of Frederick Jackson (Count 1), one count of felony murder predicated on aggravated assault for the death of Jackson (Count 2), three counts of felony murder for the death of Tony Lyons (predicated on the aggravated assaults of Stanley Babb and Glenn Morgan, respectively, as well as home invasion) (Counts 3-5), three counts of aggravated assault (Counts 6-8), two counts of home invasion (Counts 9, 14), two counts of criminal attempt to commit a felony (Counts 10, 15), three counts of possession of a firearm during the commission of a felony (Counts 11-13), and one count of possession of a firearm by a convicted felon (Count 16). Lyons was tried by a jury in November 2017 and was found guilty of the three counts of felony murder for the death of Tony, two counts of aggravated assault, one count of home invasion, and two counts of possession of a firearm during the commission of a felony. The jury found Lyons not guilty of the malice and felony murder of Jackson, as well as the aggravated assault of Jackson and possession of a firearm during a felony based upon the aggravated assault of Jackson. Lyons was similarly found not guilty for two counts of criminal attempt to commit a felony and one count of home invasion. The count for possession of a firearm by a convicted felon was nolle prossed. The trial court sentenced Lyons to life in prison without the possibility of parole for the felony murder of Tony (predicated on the

numerous errors by: (1) allowing certain state exhibits to go to the jury during deliberations in violation of the continuing witness rule; (2) improperly instructing the jury on aggravated assault; (3) permitting the State to elicit hearsay testimony; (4) admitting photographs of Lyons in possession of a gun; (5) sentencing Lyons on the aggravated assault counts; and (6) admitting gang-related evidence. Lyons also argues that he received ineffective assistance of counsel at trial because: (1) trial counsel failed to object to certain witness statements and (2) trial counsel failed to object to the admission of inadmissible hearsay statements. We agree that the trial court erred in sentencing Lyons for the aggravated assault of Tony (Count 7), and accordingly vacate that sentence. However,

---

aggravated assault of Babb), and merged the other two felony murder counts. Lyons was also sentenced to concurrent terms of twenty years in prison each for the two remaining aggravated assault counts, a concurrent term of 20 years in prison for home invasion, and consecutive terms of five years in prison for each count of possession of a firearm during the commission of a felony.

On November 21, 2017, Lyons filed a motion for new trial, which was subsequently amended. The trial court denied the motion for new trial on April 11, 2019, but then vacated (rather than merged) the two felony murder counts. Lyons filed a timely notice of appeal on April 22, 2019. This case was docketed in this Court to the term beginning in December 2019, and was submitted for a decision on the briefs.

with respect to Lyons' remaining assertions, we affirm the trial court's judgment.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial shows that Stanley Babb and Glenn Morgan lived together in a second-floor apartment. Frederick Jackson stayed with them periodically in a spare room. Babb received a pension check for approximately $52,000, which had been paid to him in a lump sum. Babb left a copy of the check sitting out in his living room for some time. Tony, who knew Babb, knew of the payout. Tony's girlfriend, Teisha Harvest, later told investigators that Tony had been planning to rob Babb and discussed his plans with one of his brothers. Harvest testified that she attempted to talk Tony out of the robbery. Tony also discussed Babb's payout with his cousin, Lyons.

On the morning of November 27, 2015, Tony, who was with Lyons, offered Ashley Smith-King, who lived in the apartment below Babb and Morgan, $100 to go knock on Babb's door. Smith-King did so, and after Babb finished speaking with her, he closed his front

door but did not lock it. Approximately ten to fifteen minutes later, two masked men forced their way into Babb's apartment.[2] One of the men placed his hands around Babb's neck, but when Babb called out for Morgan, the men ran away.

Early in the morning three days later, Jackson, who was masked, walked into Babb and Morgan's apartment through the back sliding door and let in Tony and Lyons, who were also masked, through the front door. Babb, who was in the living room of the apartment, stood up, and Tony put a gun to his head. Babb called out for Morgan, who was in the back of the apartment. Morgan came into the living room with a shotgun, and was immediately fired upon by one of the men standing at the front door. Morgan returned gunfire, shooting Tony in the back, killing him. Jackson and Lyons fled the apartment. Police arrived at the scene and discovered Jackson's body behind the apartment complex. Jackson had been shot twice in the head and once in the back. Ballistics analysis of

---

[2] Babb testified that he thought one of the men was Tony based on his physical build, but could not actually identify the intruders due to the masks they were wearing.

bullets recovered from the apartment and Jackson's body revealed that a 9mm firearm had been used at the scene, and that a different 9mm firearm had been used to kill Jackson.

After the home invasion, Lyons called Kendra Berry, his ex-girlfriend, and told her that he and Tony had tried to rob someone. He said that he had shot at Morgan, and that Tony had been shot by Morgan and did not make it out. He also said that he had fled the apartment. Lyons later left Berry a voicemail threatening to kill her and her family, as well as Morgan, which was played for the jury during Berry's recorded interview.

While incarcerated, Lyons admitted to a fellow inmate, Pierre Holloman, that he had committed the robbery with Tony. Lyons also told his cellmate, Richard Beck, that he had helped plan the robbery and that one of the participants had been shot. Lyons asked Beck whether water would remove fingerprints from a weapon and mentioned dumping "either a 9 millimeter or a Smith and Wesson" into a lake or creek.

1. Although Lyons does not challenge the sufficiency of the

evidence, it is our customary practice in murder cases to review the record independently to determine whether the evidence was legally sufficient. Having done so, we conclude that the evidence as summarized above was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that Lyons was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20; *Muckle v. State*, 302 Ga. 675, 679 (1) (b) (808 SE2d 713) (2017).

2. Lyons argues that the trial court erroneously allowed certain state exhibits to be given to the jury during its deliberations in violation of the continuing witness rule. Lyons concedes trial counsel did not object to the trial court's decision, but he argues that it was plain error to allow the following evidence to go out with the jury: (1) the written statement of Jackson's mother (Clentene Holmes) to police (Exhibit 1); (2) video of Berry's interview with police (Exhibit 104); (3) Berry's written statement to police (Exhibit 105); (4) his cellmate Beck's audio-recorded interview with police (Exhibit 108); and (5) surveillance video from the apartment

complex (Exhibit 187).

During jury deliberations, the jury sent a note to the trial court saying it "need[ed] exhibit number 1," which was Holmes' written statement, and the trial court asked the parties how they wanted the court to respond. Lyons' trial counsel noted that the jury could not have the statement in the jury room because of the continuing witness rule. The trial court responded that the jurors could read it in the courtroom, and Lyons' counsel agreed. The trial court indicated that it would bring the jurors to the courtroom and explain to them that the jurors could not take the statement with them for deliberations because of the continuing witness rule and the danger of their placing undue influence on the statement, but that they could read it in the courtroom. Lyons' counsel agreed to this procedure. The trial court then brought the jurors back into the courtroom, explained the continuing witness rule and related concerns to the jurors, and allowed them to take turns re-reading Holmes' statement. The jury then returned to the jury room to continue deliberating. Lyons' counsel did not object.

About 30 minutes later, the jury sent another note to the trial court asking to review Berry's and Beck's recorded interviews with police, as well as Berry's written statement and the surveillance video. The interviews and surveillance video were played for the jury in the courtroom and the jury was permitted to re-read Berry's statement in the courtroom.  Lyons' counsel did not object to this.

Even assuming plain error review applies to this claim,[3] Lyons' argument fails.

> To show plain error, [Lyons] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) *Lupoe v. State*, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016).  "Satisfying all four prongs of the standard

---

[3] We do not decide here whether allowing the jury to review written statements as well as recorded interviews in the courtroom is an evidentiary ruling requiring, as Lyons argues, a review for plain error in the absence of a timely objection at trial under the current Evidence Code.  See OCGA § 24-1-103 (d).  Because, as explained herein, there is no plain error, we need not decide the issue.  See *Rainwater v. State*, 300 Ga. 800, 802 (2) n.3 (797 SE2d 889) (2017).  However, the continuing witness rule itself was not changed by the current Evidence Code.  See id.

is difficult, as it should be." (Citation and punctuation omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

The continuing witness rule "regulates which documents or recordings go into the jury room with the jury during deliberations and which ones do not." *Clark v. State*, 296 Ga. 543, 549 (4) (769 SE2d 376) (2015).

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once. The types of documents that have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations.

(Citation and punctuation omitted.) *Rainwater v. State*, 300 Ga. 800, 803 (2) (797 SE2d 889) (2017).

However, the continuing witness rule does not prevent "the replaying of recorded statements . . . in the courtroom at the jury's request during deliberations." *Clark*, 296 Ga. at 549 (4). Rather, the continuing witness rule applies to recordings that go back with

the jury into the jury room.

The record shows that, during the course of their deliberations, the jury was permitted to re-read Berry's and Holmes' written statements and re-watch the recorded statements and surveillance video in open court. Lyons does not show by reference to the record that any of the evidence at issue was, at any time, viewed by the jury in the jury room. It follows that there is no error, let alone plain error, with respect to these exhibits. See *Broxton v. State*, 306 Ga. 127, 135 (3) (829 SE2d 333) (2019).

3. Lyons next argues that the trial court gave improper jury instructions on the aggravated assault counts. We disagree.

Counts 7 and 8 of the indictment charged Lyons with aggravated assault based on Lyons' assaulting Babb and Morgan "with a deadly weapon to wit: a gun, by shooting toward [them]." Lyons argues that the trial court constructively amended the indictment by allowing the jury to convict on these counts if it found that Lyons merely pointed a pistol at Babb and Morgan. The trial court instructed the jury, with respect to aggravated assault:

A person commits an assault when that person attempts to commit a violent injury to the person of another or commits an act that places another in reasonable apprehension of immediately receiving a violent injury. A person commits the offense of aggravated assault when that person assaults another with a deadly weapon. To constitute such an assault actual injury to the alleged victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the defendant attempted to cause a violent injury to the alleged victim or intentionally committed an act that placed the alleged victim in reasonable fear of immediately receiving a violent injury. The state must also prove as a material element of aggravated assault as alleged in this case that the assault was made with a deadly weapon. A firearm when used as such is a deadly weapon as a matter of law.

The trial court also gave the jury a copy of the indictment and charged the jury that the burden of proof rested upon the State to prove every material allegation of the indictment and every essential element of the crimes charged beyond a reasonable doubt. Lyons' counsel did not object, so plain error review applies. See OCGA § 17-8-58 (b).

We see no plain error in the instruction given here. The trial court instructed the jury that it could find Lyons guilty of aggravated assault if he "attempted to cause a violent injury" to

Babb and Morgan (as the indictment alleges, by shooting toward them) or if he "intentionally committed an act that placed" Babb and Morgan "in reasonable fear of immediately receiving a violent injury." Because Babb and Morgan saw Lyons' co-defendants shooting toward them, this portion of the instruction was also proper. Moreover,

> [e]ven where a jury instruction is defective in that the trial court instructs the jury that an offense could be committed by other statutory methods than the one method charged in the indictment, which did not occur in this case, such a defect is cured where, as here, the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt.

(Citation and punctuation omitted.) *Flournoy v. State*, 294 Ga. 741, 744 (2) (755 SE2d 777) (2014).

Similarly, Lyons argues that the jury instruction for Counts 3 and 4, which charged Lyons with the felony murder of Tony Lyons predicated on aggravated assault by pointing a firearm at Babb and Morgan, constructively amended the indictment by allowing the jury

to convict Lyons if it found that Lyons merely pointed a gun at Babb or Morgan as opposed to shooting them.  With respect to the felony murder charges, the trial court instructed the jury:

> If you find and believe beyond a reasonable doubt that the defendant committed the homicide alleged in the bill of indictment at the time the defendant was engaged in the commission of aggravated assault or home invasion then you will be authorized to find the defendant guilty of murder whether the homicide was intended or not.  In order for the homicide to have been done in the commission of these particular felonies there must be some connection between the felony and the homicide.  The homicide must have been done in carrying out the unlawful act and not collateral to it.  It is not enough that the homicide occurred soon or presently after the felony was attempted or committed.  There must be such a legal relationship between the homicide and the felony so as to cause you to find that the homicide occurred before the felony was entered in or before any attempt to avoid conviction or arrest for the felony.  The felony must have a legal relationship to the homicide, be at least concurrent with it in part and be a part of it in an actual and material sense.  A homicide is committed in the carrying out of a felony when it is committed by the accused while engaged in the performance of any act requiring for the full execution of the felony.

Lyons concedes that trial counsel did not object after the instruction was given, and, as a result, argues plain error.

Count 4 was vacated by the trial court, and therefore Lyons'

challenge as to that count is moot. See *Hoehn v. State*, 293 Ga. 127, 130 (3) (744 SE2d 46) (2013). As to Count 3, Lyons was charged with causing the death of Tony after pointing a firearm at Babb, which was the underlying felony of aggravated assault. The jury could not convict Lyons of felony murder by simply finding that he pointed a firearm at Babb; it had to find that Lyons' act of pointing a firearm at Babb led to the shooting death of Tony. "Thus, there is no possibility that the jury convicted defendant of committing a crime in a manner not charged in the indictment," as the trial court's instruction on felony murder adequately informed the jurors as to the elements they were required to find in order to convict Lyons of the felony murder charged here. See *Patel v. State*, 278 Ga. 403, 407 (5) (603 SE2d 237) (2004). See also *Flournoy*, 294 Ga. at 745 (2). As there was no error, Lyons' assertion of plain error fails.

4. Lyons next argues that the trial court erred by permitting the State to elicit hearsay testimony. More specifically, the trial court permitted Jackson's mother, Holmes, to testify to what Jackson told her that he observed regarding the prior home invasion

at Babb and Morgan's residence. Holmes testified that Jackson had been sleeping in the back room of the apartment when he heard Babb calling out and that Jackson asked Babb what had happened. We conclude that, even if these statements were admitted erroneously, they were cumulative of other evidence, and thus any error in their admission was harmless.

The admission of evidence is committed to the sound discretion of the trial court, and the trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion. See *Young v. State*, 297 Ga. 737, 739 (2) (778 SE2d 162) (2015). Lyons argues that Holmes' testimony was hearsay because Holmes did not have direct knowledge of the prior incident and did not hear the statements "regarding a prior possible break-in" herself,[4] while the State argues that Jackson's statements qualified as excited utterances under OCGA § 24-8-803. Even assuming without deciding that the admission of the statements was an abuse

---

[4] It is not clear precisely which statements Lyons is referring to in his brief.

of discretion, we conclude that any such error was harmless and thus does not require reversal.

Under the current Evidence Code, "[e]rror shall not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected[.]"  OCGA § 24-1-103 (a). "In determining whether trial court error was harmless, we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." (Citation and punctuation omitted.) *Peoples v. State*, 295 Ga. 44, 55 (4) (c) (757 SE2d 646) (2014).  "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (Citation and punctuation omitted.) Id. Generally, "the erroneous admission of hearsay is harmless where substantial, cumulative, legally admissible evidence of the same fact is introduced." *Anglin v. State*, 302 Ga. 333, 336 (2) (806 SE2d 573) (2017).

Here, Babb testified that two men had previously invaded his

apartment, and that he suspected Tony had been one of them. Holmes only indicated that there had been a prior home invasion. This testimony added nothing to what the jury learned from Babb's testimony and was less specific about who was involved in the prior home invasion. Thus, even if Holmes' testimony was admitted in error, the admission of Holmes' statements was harmless. See *Anglin*, supra.

5. Lyons argues that the trial court abused its discretion in admitting a photograph showing Lyons in possession of a gun because it improperly placed his character in issue and was highly prejudicial. We disagree.

While questioning a police detective, the prosecutor showed the detective a photograph of Lyons in which Lyons is holding a gun. The detective testified that his agents had taken the photograph from Lyons' social media account and used it to confirm Lyons' identity with Babb and Morgan's downstairs neighbor, Smith-King. The detective further testified that the gun could be a 9mm handgun. Lyons objected to the State's use of the photograph as

impermissible character evidence. The trial court agreed that the photograph was being used "for more than identification," but it ultimately admitted the photograph into evidence over objection.

Lyons argues that the photograph was improperly admitted into evidence because it constituted improper character evidence by suggesting he is violent.[5]  Lyons further argues that the State had no direct evidence that Lyons owned a 9mm gun and wanted to use this photograph to tie Lyons to the crime scene, which made the photograph especially prejudicial in light of the weak evidence against Lyons.

OCGA § 24-4-404 (a) provides that "[e]vidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion," with certain exceptions not applicable here.  Moreover,

---

[5] Lyons mentions once in his brief that a proper foundation was not laid for admission of the photograph into evidence, though he did not object at trial. Although Lyons does not support his assertion with any citation of authority in the brief, a review of the record shows that an adequate foundation was developed for the photograph.  See *Blackledge v. State*, 299 Ga. 385, 390-391 (4) (788 SE2d 353) (2016).

relevant evidence may be excluded under OCGA § 24-4-403 ("Rule 403") "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The photograph was relevant to show that Lyons, at some point, possessed the type of gun used in the crimes at issue. The probative value of this evidence was not substantially outweighed by its prejudice, as even evidence that a defendant "owned and frequently carried a pistol does not impute to him generally bad character." *Marshall v. State*, 297 Ga. 445, 449 (2) (b) (774 SE2d 675) (2015). The trial court did not abuse its discretion by permitting the jury to view evidence that Lyons, at one point, possessed a gun.

6. Lyons further argues that he was erroneously sentenced on Counts 7 and 8, and that the sentences for these convictions should have merged with his felony murder conviction. We agree with respect to Count 7 and vacate that sentence. However, we affirm

the trial court's judgment as to Count 8.

In Counts 7 and 8, Lyons was charged with aggravated assault based on his shooting toward Babb and Morgan, respectively. Lyons was sentenced to two concurrent prison terms of twenty years for these convictions. Lyons was also convicted of the felony murder of Tony predicated on the aggravated assault of pointing a firearm at Babb in Count 3 and was sentenced to life in prison without the possibility of parole.[6] Although the felony murder and the underlying felony were committed against different victims, Count 3 sets forth the aggravated assault of Babb as the underlying felony supporting the charge of felony murder. That the underlying felony leading to the murder of Tony alleges that the aggravated assault was "pointing" a gun at Babb, and Count 7 alleges that the aggravated assault was the "shooting" of said gun at Babb, is of no importance here because there was no deliberate interval between these acts. See *Solomon v. State*, 293 Ga. 605, 606 (1) (748 SE2d

---

[6] Count 4, which charged Lyons with the felony murder of Tony, was predicated on the aggravated assault of Morgan, and was vacated by the trial court.

865) (2013). Accordingly, a separate conviction and sentence on Count 7, alleging the aggravated assault of Babb, was not authorized and must be vacated. See *Wyman v. State*, 278 Ga. 339, 339 (1) (602 SE2d 619) (2004). A conviction and sentence on the remaining aggravated assault count, Count 8, was authorized, however, as it involved a different victim than did the other aggravated assault count or the felony murder count, and it was not specified in the indictment as the underlying felony. See id. at 340 (1).

7. Lyons next argues that the trial court abused its discretion by admitting certain gang-related evidence relating to Tony and Jackson, which he contends was highly prejudicial and improperly placed his character at issue. Lyons' argument lacks merit.

Prior to trial, the trial court had initially ordered that no evidence of Lyons' association with a gang would be admissible unless a problem with witness cooperation arose, at which point the State would have to raise the issue outside the presence of the jury. At trial, the court allowed the State to elicit testimony regarding the

*victims'* gang activity.

On appeal, Lyons specifically takes issue with the testimony of two police officers, who testified about their experience with gang activity, and with the testimony of Smith-King, who testified about Tony's gang activity. Specifically, one officer testified to his experience and training in gang law enforcement, mentioned gang activity in the apartment complex where the shootings occurred, and stated that he recognized Jackson as one of the victims from his work with gangs. The other officer testified similarly about his experience working with gangs and about Tony's gang affiliation. Smith-King also testified about Tony's gang affiliation and the beating she received in retaliation from Tony's gang for speaking with police regarding the shooting at Babb and Morgan's apartment. At trial, Lyons objected to the gang-related testimony of both officers on the basis of relevance, and he argues on appeal that the evidence was highly prejudicial to him in violation of Rule 403 because it was not relevant to him as it did not show that he was affiliated with a gang or committed any crime in furtherance of a gang.

We need not decide whether the trial court erred in admitting the gang evidence. To the extent the trial court erred, any such error was harmless. Here, the evidence at issue pertains to the victims, not to Lyons; there was no evidence that Lyons had any connection with the gang. The evidence therefore at most impugned their character rather than his. As the evidence was not prejudicial to Lyons, we conclude that it is highly probable that any error in the admission of the gang evidence did not contribute to the guilty verdicts against Lyons.

8. Finally, Lyons argues that he received constitutionally ineffective assistance when his trial counsel failed to object to certain witness statements.[7] Because Lyons cannot establish that he received ineffective assistance, Lyons' claims fail.

> In order to succeed on his claim of ineffective assistance, [Lyons] must prove both that his trial counsel's performance was deficient and that there is a

---

[7] Lyons lists an additional officer among those about whom he is raising claims in the heading of this enumeration, but does not actually make any argument relating to that officer and does not point to any testimony in the record to support his claim. We therefore consider it abandoned. See Supreme Court Rule 22; see also *Cotton v. State*, 297 Ga. 257, 260 (3) n.5 (773 SE2d 242) (2015).

reasonable probability that the trial result would have been different if not for the deficient performance.  If an appellant fails to meet his or her burden of proving either prong of the [*Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)] test, the reviewing court does not have to examine the other prong.  In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.)  *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).  Furthermore, "[t]rial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014).

(a) Lyons first complains that trial counsel should have objected to Holmes reading her statement to police into evidence. The statement was brief and said that Holmes saw her son, Jackson, the night before the shooting when she dropped off some clothes for him at Babb and Morgan's apartment. Lyons also complains that

Smith-King read her written statement to the jury and that it was admitted into evidence without objection. Smith-King's statement essentially relayed how Tony had offered her $100 to knock on Babb and Morgan's apartment door, and how, several days later, she awoke to gunshots. Lyons also appears to take issue with trial counsel not objecting to Smith-King's testimony regarding the assault she experienced by members of Tony's gang in retaliation for speaking with police, as this put prejudicial gang-related evidence before the jury. This testimony was also admitted without objection.

Assuming, without deciding, that trial counsel was deficient in failing to object to this testimony, we nevertheless conclude that Lyons is not entitled to relief on this ground because he cannot demonstrate prejudice. There was, at best, a tenuous connection between the problematic testimony and Lyons. Moreover, "there was no evidence showing either that the crime was gang-related or that [Lyons was] motivated to participate in the crime by virtue of shared group membership. The prosecution made no reference to such a theory either in its opening statement or closing argument."

(Citation and punctuation omitted.) *Gittens v. State*, 307 Ga. 841, 845 (2) (b) (838 SE2d 888) (2020). Accordingly, Lyons has failed to show that his trial counsel was constitutionally ineffective in this regard. Moreover, we have considered the cumulative effect of this presumed deficiency of counsel along with the errors assumed in Divisions 4 and 7 and do not find that they collectively resulted in harm to Lyons. See *State v. Lane*, 308 Ga. 10, 14 (1) (838 SE2d 808) (2020).

(b) Lyons further complains that trial counsel should have objected to the admission of the video-recorded interview of Berry because it improperly bolstered her testimony and contained multiple layers of hearsay — including Lyons' voice message — and because the entire video also constituted hearsay. However, a hearsay objection to the voicemail would have been meritless because Lyons' statements in that voicemail were admissions of a party opponent under OCGA § 24-8-801 (d) (2) (A) ("Admissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is . . . [t]he party's own

statement[.]").  Additionally, to the extent Lyons argues that trial counsel should have made her objection to a lack of foundation as to the voicemail instead of to the video interview, Lyons' argument fails.  Berry testified that she had previously been in a relationship with Lyons and that it was Lyons' voice in the voice message, which she played from her cell phone.  Lyons has not shown that had trial counsel objected to a lack of foundation as to the voicemail, such an objection would have been meritorious.  See OCGA § 24-9-901 (b) (5). Failure to lodge meritless objections does not support an ineffective assistance claim.  See *Robinson v. State*, 303 Ga. 321, 327 (3) (b) (812 SE2d 232) (2018).

Further, although Lyons' trial counsel was not asked why she failed to make an objection to the video-recorded interview based on bolstering or on the grounds that the entire video-recorded interview was hearsay, she testified that she viewed the video-recorded interview as beneficial because it introduced a longer history of the tumultuous relationship between Lyons and Berry, which, in trial counsel's view, negatively affected Berry's credibility and

demonstrated a reason why Berry may have lied about Lyons' involvement. "[I]n the absence of evidence to the contrary, counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim." (Citation and punctuation omitted.) *Lupoe*, 300 Ga. at 241 (2) (c). Therefore, Lyons' contention fails.

(c) Lyons additionally argues that trial counsel should have objected to the testimony of a detective, who testified that Teisha Harvest "basically told me that she was a girlfriend of Tony Lyons and that she lived in . . . one of the apartments there and that he had stated that he knew that [Babb and Morgan] had money, $50,000 to be exact, and that they were planning to rob him." Harvest had heard Tony speaking with his brother, Tonio, at that time, although the detective did not know who else may have been present. Lyons further argues that trial counsel also should have objected to a police officer's testimony regarding "gang violence and its detriment on the community." That officer testified that his background included gang investigation, that the apartment

complex was known for gang activity, and that he recognized Jackson's body from his previous investigations while part of a gang investigation unit.

However, at the motion for new trial hearing, Lyons' trial counsel testified that she did not believe the detective's testimony was harmful to Lyons because it framed Tony as the "mastermind." The detective's testimony also associated Tony with another person — his brother, and not Lyons — with respect to planning the robbery. Lyons' trial counsel further testified that she chose not to object to the police officer's testimony because none of the testimony connected Lyons to a gang — rather it connected the victims to gangs, which made Lyons look better by comparison because there was no evidence that he was involved in a gang in any way. In light of this testimony, we cannot say that trial counsel's strategy was unreasonable, and therefore Lyons has failed to show that counsel performed deficiently. See *Morrison v. State*, 300 Ga. 426, 428-429 (2) (796 SE2d 293) (2017) (trial counsel's choice not to object to witness testimony because counsel believed it supported the defense

was a reasonable decision); *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001) (as a general rule, matters of reasonable trial tactics do not amount to ineffective assistance of counsel).

(d) Finally, Lyons argues that trial counsel should have made a hearsay objection to the testimony of Lyons' cellmate, Beck. Beck testified that Lyons told him that he was charged with murder, that he had been staying at the apartment complex, that he had planned a robbery with some friends, that somebody had gotten shot, and that he left. Lyons also asked Beck whether water would take fingerprints off of a gun, and mentioned dumping either a 9mm or Smith and Wesson. However, Lyons' statements to his cellmate were his own and, therefore, were admissible as admissions of a party opponent. See OCGA § 24-8-801 (d) (2) (A); *Harvey v. State*, 300 Ga. 598, 603 (3) (797 SE2d 75) (2017), overruled on other grounds by *Nalls v. State*, 304 Ga. 168 (815 SE2d 38) (2018). Failure to lodge a meritless objection does not support an ineffective assistance claim. See *Robinson*, 303 Ga. at 327 (3) (b).

*Judgment affirmed in part and vacated in part. All the Justices*

*concur.*

DECIDED JUNE 1, 2020.
Murder. Henry Superior Court. Before Judge Pipkin.
*Christina M. Kempter*, for appellant.
*Darius T. Pattillo, District Attorney, Sharon L. Hopkins, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.